Brockenbrough, J.
The first question is that presented by the demurrer to the indictment: Whether the indictment was good and sufficient in law? This depends on the construction of the statute on which the indictment is founded. The statute declares that “ if any person shall hereafter be guilty of stealing or selling any free person for a slave, knowing the person so sold to be free,” such person being convicted thereof, shall be imprisoned in the penitentiary for a term not less than one nor more than ten years. 1 Rev. Code, ch. 111. § 28. p. 427.
It is alleged by the prisoner’s counsel, that the statute does not intend to declare the stealing alone of a free person to be felony, but that the selling him for a slave is an essential ingredient of the offence; that both acts must concur to make the crime. In support of this position, they rely, 1st, on the preamble of the original act of 1787, and 2dly, that the word stealing is a technical word, and that there can be no larceny except of property.
*591 The preamble of the original statute recites, that “whereas several evil disposed persons have seduced or stolen the children of black and mulatto free persons, and have actually disposed of the persons so seduced or stolen as slaves, and punishment adequate to such crimes not being by law provided for such offendersand then the enacting clause uses the words above recited. Although the preample of a statute is the key which unlocks the mind of the legislature, where its intention is doubtful, yet where the words are clear and unambiguous, the language of the enacting clause furnishes the rule which is to be followed. If the enacting clause clearly and plainly provides for the punishment of an offence, which is not contained within the preamble, surely the courts must carry the enactment into effect. If they do not, then they substitute the preamble for the enactment. If the preamble is more extensive than the enactment, they make a law which the legislature did not enact; if less extensive, they omit to enforce a law which is enacted. In this case, though the preamble recites that the children of free blacks and mulattoes had been stolen and disposed of, yet the enactment prohibits the stealing or selling. If the legislature had intended, that both acts should concur, it would have said, “ if any person shall be guilty of stealing and selling.” There can be no good reason why the courts should convert or into and, and there is the best reason why they should not. If the word “ and” had been used, then a person might lawfully obtain possession of a free negro, or the child of one, and knowing perfectly that he is free, might sell him as a slave, without violating this law. A guardian might thus dispose of his. ward, or a master of his apprentice. So a person might unlawfully, and secretly steal such free negro, with the most felonious intention, hire him out from year to year for his whole life in a distant part of the country, and not be subject to its penalties. Or one might steal, and another sell, without either being liable to the punishment of felony. Such being the consequences, which would result from changing the language of the enacting *592 clause, to make it fit the preamble, we are all of opinion, that it cannot be done.
But it is argued that “ stealing•” is a technical word, that it means a larceny, and that there cannot be a larceny except of the personal goods of another, and a free person is-not property. It is true, that the word is usually applied to the taking of property, but it is certainly competent for the legislature to apply it to the felonious taking of a free person, although the common law does not so apply it; and to the court it seems clear, that it is the appropriate phrase. Negroes and mulattoes are in our state generally slaves, arid as slaves they are personal chattels : when they are emancipated, or otherwise become free, they are no longer chattels, but their colour renders them an easy prey to the arts and violence of desperate and abandoned villains. If they are carried away by force, or seduced by fraud, from their accustomed homes, to places where they are not known, their freedom is easily wrested from them, and they become slaves, and as such chattels. If then a person wrongfully takes and carries away a free negro, with the felonious design of converting him to his own use, by selling, or otherwise making him his property, he may with great propriety be said to be guilty of stealing him, and in this sense it was undoubtedly used by the legislature in the act now under consideration.
For these reasons we are of opinion that the demurrer to the indictment was properly overruled.
The next question arises from the first bill of exceptions taken to the opinion of the court. (Here the judge stated the substance of the instruction given by the circuit court to the jury, from the bill of exceptions.) Whether this instruction be correct or not, depends, 1st, on the construction of the statute. Is it necessary to constitute the offence, that the person stealing a free person should know him to he free ?
The object of the statute was to protect free negroes and mulattoes in the enjoyment of their freedom ; and to pre *593 serve that freedom it was necessary to guard them against two classes of persons; 1st, those who might obtain a wrongful or illegal possession of them for the purpose of converting them to their own use; 2ndly, those who having a rightful possession, or at least a possession not illegal, might sell them as slaves. The moral guilt of the first class, is complete by the very act of feloniously taking and carrying them away. The act of stealing a negro slave had previously been made felony. If a person steals a negro, he is then clearly guilty of felony, if he be a slave; and certainly it does not diminish, it rather aggravates, his moral guilt, that the negro so stolen (and whom he intends to sell or otherwise convert to his own use), is a free person. In both cases, he is equally guilty of the fraudulent or forcible taking$ of the fraudulent or forcible carrying away; and of the felonious intention of making the negro his own. In the one case, lie deprives another of his property; in the other he deprives the person stolen of his freedom, which is a greater injury to him than the loss of his property is to the owner of the slave. The offence, then, of stealing a free negro, being greater than that of stealing a negro slave, it is not at all probable, that the legislature in passing a law, especially designed to prevent free negroes from being stolen, would require an additional ingredient in the constitution of the crime $ an ingredient not required in any case of larceny, nor necessary to the completion of the offence. But in the other class of offenders—those who having a lawful possession, yet sell the negro—a knowledge of the fact that the negro is free, seems to be a necessary constituent of the offence. A man may receive stolen goods innocently, but if he receives them knowing them to he stolen, in that knowledge consists his crime. So if a man having purchased a negro, sells him, although the negro be in fact free, yet when he sells him he is guilty of no crime, if he did not know him to be free: the criminal intent is altogether wanting. If he acquires possession in any other lawful manner, by loan, or by hire, and sells him, although he is not innocent, *594 having violated his trust, yet he is guilty of no offence against the. freedom of the negro, unless he knows at the time of the sale that he is free. If those who drafted this short act, had not been too anxious for brevity, and too much afraid of tautology, there could not have been a doubt raised on the subject. “ If any person shall hereafter be guilty of stealing”—What? “ any free person” is the subject of the stealing. Is it then proper to read, “ knowing the said person so sold to be free ?” Certainly not, because the words so sold do not refer to the stealing, but to the selling. Those words, therefore, do not form any part of .the offence of stealing : it is complete without them. The clause then must be understood thus : “ If any person shall hereafter be guilty of stealing any free person, or selling any free person for a slave, knowing the person so sold to be free,” &c. By using the words “ any free person” after stealing, and then repeating them after selling, the whole difficulty is cleared away.
It is argued, however, that, as the indictment charges that the prisoner knew the mulatto boy to be free, it is necessary to prove the allegation. But we do not understand, that such is the rule. On the contrary, if an averment be introduced into an indictment, which is altogether superfluous and immaterial, and if the indictment is sufficient without the words so introduced, they may be rejected as surplusage, and need not be proved. 1 Chitty Cr. Law, 173. Ib. 232. Bennet’s case, 2 Virg. Ca. 235. Pomeroy’s case, Ib. 342. and Derieux’s case, Ib. 379. Now, in this case, if the construction given to the statute be correct, the averment of the knowledge of the prisoner that the boy stolen was free, is intirely unnecessary and superfluous. The indictment is good without it, and it was therefore unnecessary to prove it.
This case differs intirely from Booth’s case, 6 Rand. 669. cited by the petitioner’s counsel. The statute, in that case, punishes a master &c. who shall knowingly permit more than five negroes or slaves, other than his own, to be and remain &c. The indictment charged, that the defendant permitted *595 more than five negro slaves to bo and remain fee. The court said, that as the prosecutor had not charged an assemblage of free negroes, but one of slaves only, he was not allowed to prove what he did not charge; for the allegata and probata must agree. There was no surplusage in that indictment; but the prosecutor wished to produce surplus proof. But here there is surplusage in the averment; and as the crime is sufficiently alleged, when that surplusage is rejected, it need not be proved.
Of the point stated in the second bill of exceptions, little need be said. The prisoner’s counsel moved the court to instruct the jury, that they must be satisfied that the taking and carrying away of the free boy was against his consent, he being not more than eight years of age. A child of that age is incapable of giving his consent, and incapable of collusion. It was, therefore, not necessary to prove, that it was against his consent. It is not like Mercer's case, 2 Virg. Ca. 144.
On these questions, this court is unanimous in its opinion, but on the questions arising on the last bill of exceptions, there is some difference of opinion. From that bill of exceptions it appears, that after the instruction had been given to the jury by the court on the construction of the statute, one of the counsel for the accused attempted to argue the correctness of the instruction, when he was stopped by the court, and informed that the court would not permit the questions of law embraced in that instruction to be argued, or controverted by the counsel, and prevented the same from being so argued or controverted, the instruction having been given on a motion of the prisoner’s counsel to give the contrary instruction. Did the court err in this respect ?
To decide this question, the majority of the court does not deem it necessary to inquire into the general question of the power of the court, to conlroul the prisoner’s counsel in arguing questions of law before the jury, which have been decided by the court, when that decision has been *596 made by the court without any application from the bar, or upon the motion of the commonwealth’s counsel, nor into the question of the right of the jury, as contradistinguished from its power, to hear and decide on the law as well as the fact in a criminal case. Those general questions are yet pending in this court in Word’s case, and Garth’s case, and may be decided hereafter. But, in this case, the question, is, whether after the prisoner’s counsel has moved the court to instruct the jury on a question of law, and the court has performed that duty, which it could not refuse, but has given an instruction different from that which the counsel thought ought to have been given, the counsel can then be allowed to controvert that opinion, and argue the same question of law before the jury. The bill of exceptions does not give the particulars of that proceeding; and, as it was tendered by the counsel for the accused, it must be presumed, that if there was any thing else in the conduct of the court, which the prisoner or his counsel supposed was irregular, or deprived him of any other tittle of his rights, it would have been excepted to. It may then be assumed as a fact, that when the prisoner’s counsel moved for the instruction on a question of law, he argued that question of law before the court, that the attorney for the commonwealth answered him, that the prisoner’s counsel replied to the attorney, and that these arguments were all in the hearing of the jury • that the court then gave its instruction to the jury, to which the prisoner’s counsel excepted. It may also be assumed as a fact, that before the motion for the instruction was made, the court expressed its wish, that the counsel on each side would argue before the jury the whole case, law and fact, and its determination to give its opinion to the jury, on the law after the argument on both sides should be closed; and that this wish of the court was frustrated by the motion of the prisoner’s counsel asking for a decision of the law before the argument should be made before the jury. These assumptions are intirely compatible with the statements in the bill of exceptions. The question then is, whether the pri *597 soner’s counsel, after arguing on the law before the court, in full hearing of the jury, insisting on the court’s judgment on the law, before the question is submitted to the jury, and excepting to the opinion of the court, by which he may resort to the appellate tribunal for the correction of the errors of the judge, may again argue the law before the jury, in direct contradiction to the opinion expressed by the court. We think he cannot. The court must regulate the course and order of its own proceedings, and cannot yield up that power to any counsel however respectable. If the prisoner’s counsel, after having elected to argue the Jaw before the appropriate tribunal, in the presence of the jury, be at liberty again to argue it before the jury, the attorney for the commonwealth must again argue it before them, and the court must again charge the jury on the same subject. This course of proceeding has a tendency to impair the respect which the court ought to entertain for itself, and which it ought to endeavour to inspire in others. We do not perceive, that the prisoner, or his counsel, have been deprived of any of their rights, or that the court has encroached on the rights of the jury in this case. We are of opinion, that the last bill of exceptions does not shew that any error has been committed by the court: but in this opinion two of our brethren (judges Semple and .May) do not concur.
Writ of error denied.