## Case No. 15,086.

UNITED STATES v. FENWICK et al.

[4 Cranch, C. C. 675.] [1]

Circuit Court, District of Columbia. April 7, 1836.

RIOT—UNLAWFUL ASSEMBLY—RIOTOUS ACTS—ACT OF VIOLENCE—PUBLIC EXCITEMENT—INDICTMENT—TRIAL—INSTRUCTIONS.

1. In an indictment for a riot, it is sufficient to state that the defendants assembled to disturb the peace, and being so assembled, did such and such unlawful acts.

2. It is an indictable offence, at common law, to incite others to insurrection, tumult, and riot; and the indictment need not aver that insurrection, tumult, and riot were thereby excited.

3. The defendants were permitted to give evidence, that Walker, a colored man, whose sign was pulled down by the mob, had recently said that the sign was cut down, at his request, to prevent further excitement.

4. If there is no evidence against one of the defendants, he may be examined as a witness for the other defendants.

5. If a large number of persons assemble, for the purpose of seizing a man on account of insulting language which he was reported to have used, and agree to accomplish that object, and attempt to execute it by tumultuously surrounding his house, and entering it with intent to seize him without legal authority therefor, this is a riot; and the jury may infer the intent from the acts done: and ought so to infer, in the absence of all contradictory evidence.

6. It is not necessary, in order to convict the defendants of a riot, that the intended act of violence should have been perpetrated, or that they should all have been present, doing the act.

7. It is not necessary that an act of violence should have been perpetrated.

8. Upon the count for inciting others to insurrection and riot, it is not necessary to prove an act of violence done in consequence of the incitement.

9. When either party, in a criminal prosecution, has asked an instruction to the jury, upon a question of law, and the other party has proceeded to argue the point before the court, and the court has given an instruction upon that question, the counsel has no right to argue the same question of law before the jury.

10. If either party does not join in the argument to the court, but insists upon arguing it to the jury, the court will require him to proceed with his argument. and will, after the argument is closed, give or refuse the instruction prayed, or give such other instruction as the court shall think proper.

[Cited in State v. Burpee, 25 Atl. 972, 65 Vt. 28.]

11. If three or more persons assemble, with intent, forcibly and violently to disturb the public peace in a tumultuous manner, and with intent mutually to assist each other against any who should oppose them in the execution of such purpose: and if, with force and violence, and in a tumultuous manner, they proceed to disturb the peace, either by a show of armor, threatening speeches, or turbulent gestures, to the terror of the people, this constitutes a riot, whether or not they committed the particular act of violence charged in the indictment.

12. The marshal has a right to take the posse, and to call on all citizens to aid him in arresting the rioters; and the citizens have a right to arm themselves.

13. The public excitement is no justification of the intended force and violence.

14. An intent to seize a man by force, for uttering slanderous or offensive words, and to carry him by force, anywhere, even before a justice of the peace. without a legal warrant, is an unlawful intent.

15. All concerned in an unlawful assembly are equally guilty of the subsequent acts done by any of them, in furtherance of the common object of the assembly; and all who join them after the original meeting, and who were present at any subsequent act, and either active in doing, countenancing, or supporting, or ready, if necessary. to support the unlawful act, thereby become parties to the riot. and are equally guilty of all their subsequent acts.

Indictment for a riot. The first count charged that the defendants on, &c., at the county of Washington, did unlawfully, riotously, routously, and tumultuously assemble and gather together, to disturb the peace of the United States in the said county; and, being so then and there assembled and met together, did then and there make great noises, riot, tumult, and disturbance; and then and there unlawfully, riotously, routously, and tumultuously surrounded and entered the house of Snow & Walker, and destroyed their goods, &c., and remained and continued together making such noises, riots, tumults, and disturbances, for a long space of time, to wit, for the space of five hours and more, then next following, to the great terror and disturbance, not only of the good citizens of

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

the United States in the said county, but of all other good citizens of the United States in the said county, there passing and repassing, in and along the public streets and common highways there, in contempt of the laws and against the peace and government of the United States. The second count was for inciting others to insurrection and riot. The defendants pleaded the general issue.

Upon the trial, Mr. W. L. Brent, for defendants, objected to evidence of any other act of violence than such as occurred at the house of Snow & Walker. The first count does not state for what unlawful purpose the defendants assembled, except to disturb the peace. It does not state any particular unlawful act that they assembled to do. 1 Russ. 267, and Reg. v. Gulston, 2 Ld. Raym. 1210, where it is said that aliquid illicitum, is too general.

Mr. Key, contra, cited 2 Chit. 485, 488, 490, and note.

THE COURT (THRUSTON, Circuit Judge, absent) said that they had in some previous case, decided that it was sufficient that the defendants assembled to disturb the peace, and being so assembled, did so and so; and referred to the forms of indictment in the Crown Cir. Companion, 384–390.

Mr. Hoban, for some of the defendants, moved the court to instruct the jury, that the second count does not state an indictable offence. It charges the defendants with inciting others to insurrection, tumult, and riot. There is no such offence as "insurrection" in this country. "Tumult," is too vague, and so is "riot." Starkie, Cr. Pleading, 78; Rex v. Holland, 5 Term R. 625. It ought also to have averred that insurrection, tumult, and riot were thereby excited. Reg. v. Daniell, 6 Mod. 99, 101, 182; Reg. v. Collingwood, Id. 288.

Mr. Key, contra, cited 2 Chit. 507, where there is a similar form of indictment.

THE COURT (nem. con.) refused to give the instruction.

Mr. Brent, for defendants, then offered to prove that Walker, a colored man, and partner of Snow, had, this morning, said that the sign was cut down at his (Walker's) request, to prevent further excitement.

Mr. Key, contra, objected that Walker's declarations, now made, are not competent evidence to prove his request.

THE COURT, however (CRANCH, Chief Judge, contra), overruled the objection, and permitted the evidence to be given.

The United States having closed their evidence, and there being nothing proved against Mr. Moore, one of the defendants, he was examined as a witness for the other defendants.

Mr. Hoban, for Beedle and Wetherall, two of the defendants, prayed the court to instruct the jury: (1) That if they do not believe, from the evidence, that they were present at the destruction of the property of Snow & Walker, on 6th street, or if present, not aiding and assisting thereat, the jury should acquit them. (2) That if the jurors believe, from the evidence, that the defendant Beedle was in company with a crowd, armed with clubs, and no act of violence or outrage proved, he should not be found guilty of a riot. (3) That to find the defendant guilty under the second count in the indictment, they must believe, from the evidence, that he actually persuaded, and tried to induce three or more persons tumultuously to assemble to break the peace, and do some act of violence.

Mr. Hoban contended: (1). That the act of violence, intended, must have been perpetrated; and that those only who were present, and did the act, can be found guilty. (2) That if no act of violence was perpetrated, it was no riot. (3) That, in order to convict the defendant, under the second count, there must have been an act of violence done in consequence of the incitement.

Mr. Key, contra, cited U. S. v. Gooding, 12 Wheat. [25 U. S.] 469, and contended that if the defendants assembled to do one unlawful act, and they do another unlawful act, they are guilty; and thereupon prayed the court to instruct the jury,—That if they believe, from the evidence, that the defendants, or any of them, assembled together with others, to the number of nearly one hundred, for the purpose of seizing one Beverly Snow, on account of insulting expressions which they had heard he had used, then such assembly of such persons, agreeing together to accomplish such object, and their attempting to execute such purpose by tumultuously surrounding his house, and entering it with intent to seize him, without legal authority therefor, if believed by the jury from the evidence, constituted a riot; and the jury may infer the intent from the acts done; and ought so to infer, in the absence of all contradictory evidence.

THE COURT (nem. con.) refused to give the instruction prayed by Mr. Hoban, and gave that prayed by Mr. Key.

After the court had decided the point of law which had been argued by Mr. Key and Mr. Hoban, Mr. Brent, for the defendants, other than those for whom Mr. Hoban appeared, offered to argue the same point of law to the jury, in opposition to the instruction which the court had given.

THE COURT said, that after a point of law had been argued by the counsel of the parties, and the court had, at the request of either party, instructed the jury upon the point so argued, they could not permit the question of law to be reargued to the jury, in opposition to the instruction given by the court.

Mr. Brent contended, that, as the jury had a right, in criminal cases, to decide the law as well as the fact, he, as counsel for some of the defendants, had a right to argue the law to the jury; and cited 1 Chase, Tr. pp. 5, 34; 2 Chase, Tr. pp. 59, 60; Croswell's Case, 3 Johns. Cas. 352, 376; Erskine, Speeches, 152; Van Horne v. Dorrance, 2 Dall. [2 U. S.]

307; State of Georgia v. Brailsford, 3 Dall. [3 U. S.] 4.

Mr. Key, contrâ, contended that if there can be appeal from the court to the jury upon a question of law, it can be only in capital cases. Blunt v. Com., 4 Leigh, 689; Davenport's Case, 1 Leigh, 588.

Mr. Hoban observed that he appeared for two of the defendants only, Beedle and Wetherall; and that his argument in their defence ought not to prejudice that of the other defendants.

Mr. Bradley, who appeared, with Mr. Brent, as counsel for the other defendants, contended that the rule suggested by the court, applied only to cases where the defendants have asked an instruction to the jury, or have joined in the argument to the court, upon an instruction asked by the attorney of the United States, and thereby waived their right to argue the law to the jury; and stated that they had objected to the court's giving an instruction to the jury before they had argued the law to them.

THE COURT said that they had not heard any such objection, and had considered the counsel for all the defendants as joining in the argument upon the motions of Mr. Hoban and Mr. Key to the court for instructions to the jury. But as they had made such objection, although not so understood by the court, they were allowed to argue the whole law of the case to the jury; MORSELL, Circuit Judge, observing that the court never denied the power of the jury to decide the law as well as the fact, in criminal cases by finding a general verdict; but when either party has asked an instruction, and the other party has proceeded to argue the question before the court, and the court has given an instruction upon that question, the counsel has no right to argue the same question of law before the jury. If the party does not join in the argument to the court, but insists upon arguing it to the jury, the court will require him to proceed with his argument, and will, after the argument, give, or refuse, such instruction, or give such other instruction as the court shall think proper.

Mr. Key replied to the argument to the jury, and concluded by requesting the court to instruct them upon the whole law of the case; whereupon

THE COURT instructed the jury as follows: As the counsel for some of the defendants have argued before you upon the law as well as upon the facts of the case, and the attorney of the United States has requested the court to state to you the law upon the whole case, we will endeavor to do so. In criminal cases, the jury has a right to give a general verdict, and, in doing so, must, of necessity, decide upon the law as well as upon the facts of the case. As we have not taken notes of the evidence, not having had an expectation of being called upon to give an opinion upon the whole case, we leave the question of fact entirely to your consideration.

But, as to the law, we say, that, if from the evidence you should be satisfied that the defendants, or any of them, assembled, to the number of three or more, with intent forcibly and violently to disturb the public peace in a tumultuous manner, and with intent mutually to assist one another against any who should oppose them in the execution of the purpose aforesaid, and they did thus assemble with force and violence, and in a tumultuous manner to disturb the peace, either by show of armor, threatening speeches or turbulent gestures, to the terror of the people, then such assemblage, with such intent as aforesaid, so executed, constituted a riot, whether they broke into Snow's house, or not. That the marshal has a right to take the posse, and to call on all citizens to aid him in arresting the rioters, and that the citizens had a right to arm themselves. That the excitement, whatever might be the cause, was no justification of the intended force and violence. That the intent to seize Snow, by force, for uttering slanderous or offensive words, and to carry him, by force, anywhere, even before a justice of the peace, without legal warrant, if such case should be proved to the satisfaction of the jury, was an unlawful intent. That the intent may be presumed from the act; for every man is presumed to have intended to do what he has done, until the contrary is proved. That all concerned in the unlawful assembly are equally guilty of the subsequent acts done by any of them in furtherance of the common objects of the assembly; and all who joined them after the original meeting, and who were present at any subsequent act, and either active in doing, countenancing, or supporting, or ready, if necessary, to support, the unlawful act, thereby became parties to the riot, and are equally guilty of all their subsequent acts.

The jury found six of the defendants guilty, and recommended them to the mercy of the court.

When they were brought up for judgment, CRANCH, Chief Judge, said: "Before passing sentence upon the defendants who have been convicted in the cases of riot, the court has deemed it proper to make a few observations upon the nature and tendency of the offence. Civil society cannot exist without laws to protect the weak against the strong. These laws are of no avail unless supported by the strength of the whole society, or, at least, of a majority. They must be executed according to prescribed forms, by known, responsible, public functionaries, selected for the purpose. Our judicial tribunals, and their forms of proceeding, have received the sanction of many ages, and by them the laws have been administered, to the general satisfaction of the people under all the various forms of government through which we and our ancestors have passed. In a regular government no laws can be made, or executed, but according to the forms prescribed by the constitution and fundamental laws of the state

or society. No voluntary association of individuals, unknown to the constitution, have a right to make or execute the laws, or to judge, condemn, or punish those whom they may deem to be offenders, and to punish whom they may suppose the law to be inadquate to, however pure or holy may be their motive; and if, in their fanaticism or their frenzy, they should take the life of their victim, they would be guilty of murder. Such, also, would be the judgment of the law if any unauthorized individual, or combination of individuals, should snatch from the officers of justice even a condemned murderer, and proceed themselves to execute the sentence. But the example of such an usurpation of judicial or executive functions, if unpunished, would be far more pernicious to society than the mere act of murder which would have been committed. The reign of terror would have commenced and no one could foresee the extent of its ravages. It is easier to create an excitement than to allay it; for every degree of excitement tends to pervert the judgment, to obscure the light of reason, and to sear the conscience. When a mob is once raised, no one can tell where it will end, and all who assisted in raising it are guilty of all the consequences. The more respectable the persons engaged in it, and the more desirable the end to be obtained, the more dangerous is the example; for if good men may use unlawful means to accomplish a good end, how can wicked men be restrained from using like means for an unlawful end? All good ends must be pursued by lawful means. The supremacy of the law is the only security for life, liberty, and property."

The defendants, who were convicted, were then sentenced to six months' imprisonment, and to pay a fine of fifty dollars and costs.