## STATE v. ENOS D. HOPKINS.

*Larceny. Insurance Agent Misappropriates the Funds of Company. Constitutional Law. Evidence. Memorandum. Entries. Copy. Intent. Charge to Jury. Requests.*

1. The statute, No. 1, s. 17, acts of 1874, (R. L. s. 3616), providing, that, if an insurance agent appropriates to his own use any money received by him as such agent, and does not pay over the same, etc., he shall be guilty of larceny, is constitutional.*

2. The respondent and one B. were insurance agents and partners. The indictment made no mention of the firm, but was found against the

* SEC. 17. Any insurance agent doing business in this State, who shall appropriate to his own use any money or substitute for money received by him as such agent, and refuse or neglect to pay over such money or substitute for money to the company or other party entitled to receive the same, for the space of thirty days after notice to make such payment, shall be deemed guilty of larceny, and upon conviction, shall be punished therefor in accordance with the laws of the State.

State *v.* Hopkins.

respondent alone in relation to business done in the name of the firm. *Held,* that a copy of the commission, the original having been lost, appointing the respondent and his partner agents, was admissible to prove the agency charged.

3. MEMORANDUM. In order to render an entry made by a deceased person admissible, it must be proved, that it was in his handwriting, that it was a part of his duty to make it and in the regular course of business, and that he was dead.

4. COPY OF ACCOUNT *inadmissible, the loss of the original book not being shown.* One P. was a sub-agent of the insurance firm or company to which the respondent belonged. A copy of P.'s account, showing the transactions between him and the firm, without proving the loss of the original book, was not admissible for any purpose; and the error can be taken advantage of by merely objecting to its admission, without stating a reason.

5. ENTRIES IN BANK BOOK. An assistant cashier cannot testify to entries made in the bank books prior to his employment, where it did not appear at what time they were made, or who made them, or in whose handwriting, or that he had any personal knowledge of them.

6. The respondent as an insurance agent was charged with the larceny of money from a foreign insurance company; *Held,* that it was not necessary for the prosecution to prove that the company was *legally* doing business in this State.

7. NOTICE. The neglect or refusal to pay over the money within thirty days after notice constitutes the crime. The sheriff, having the respondent in custody, duly authorized by an agent of the company, could give the requisite notice; no particular sum need be named; nor the authority to give the notice be stated.

8. There was but one offense, although several premiums were collected.

9. It was not important to inquire whether the respondent's partner had appropriated any of the insurance money to his own use.

10. The court charged correctly as to the respondent's commingling the money with his own.

11. INTENT. The respondent may be guilty under this statute although he may not have had a *fraudulent and felonious intent* to steal, or embezzle.

12. CHARGE. REQUESTS. It is the duty of the court to charge fully upon all the points of law. All rights can be saved without any requests. Requests may be of great aid to the court, if precise and certain; but when improperly drawn, they should not be considered.

13. PRACTICE. ORDER OF TRIAL. It was in the discretion of the court to allow the prosecution to examine a witness after the respondent had been directed to put in his defence; and especially so, as the respondent had no testimony to offer, and notice was given when the State rested that it was expected to use the witness.

14. READING AUTHORITIES TO JURY. The better rule is to prohibit it entirely; but it is a matter wholly in the discretion of the trial court.

15. MOTION TO SET ASIDE VERDICT on the ground that the officer having the jury in charge was present during their deliberations, was denied, it not appearing that he had any conversation with the jurors.

16. No. 1, s. 17, acts of 1874, (R. L. s. 3616), insurance agent appropriates funds of the company to his own use, construed.

INDICTMENT based upon No. 1, s. 17 of the acts of 1874, charging the respondent as an insurance agent with the larceny of money from the Fire Association of Philadelphia, a fire insurance company, having its home office in Philadelphia, Penn. Trial by jury, December Term, 1881, Caledonia County, Ross, J., presiding. Verdict, guilty.

As to the 2d question discussed by the court: The State, to prove the appointment of the respondent as agent of the Fire Association as alleged in the indictment, offered N. P. Bowman, the respondent's former partner, as a witness, who testified that Bowman & Hopkins were commissioned by the Fire Association, but that the commission was lost and could not be found; and thereupon the State produced a commission from the Fire Association to P. D. Blodgett & Co., and the witness testified, that that was like the one given Bowman & Hopkins, except that the name, Bowman & Hopkins, was inserted in the place of P. D. Blodgett & Co., and that the date was about October 1st, 1875.

Whereupon the State offered said commission of P. D. Blodgett & Co. as explained by said Bowman, as a copy of the commission issued to Bowman & Hopkins by the Fire Association, to the admission of which copy the respondent objected, for the reason that said copy showed a commission to Bowman & Hopkins, and not to the respondent Enos D. Hopkins, and therefore did not support the indictment, but was a variance from the agency of the respondent as therein alleged.

As to the 5th question: It became necessary to prove the sum due to Bowman & Hopkins on their deposit in the bank on and after September 1, 1876; and A. B. Noyes, assistant cashier, was called for that purpose, and allowed to testify, out of the regular order of procedure. When he first came into the court room, he had not examined the bank books, and was sent back to examine them. The counsel for the prosecution at this point gave notice that the State rested with the exception of using said Noyes as a witness. Thereupon the court directed the respondent to proceed with his defence, assuring his counsel that ample time should be given to meet the reserved evidence. Noyes returned

with the bank books, and was permitted to testify against the respondent's objection.

As to the notice, or 8th question: It appeared that the only notice to the respondent to pay over the money was given by W. H. Preston, the sheriff, who held the respondent in custody at the time; that after September 1, 1876, one Pope of Boston was the general agent for the insurance company in New England; that he appointed all the local agents, and their business was transacted solely with him, but prior to September 1, 1876, with the home office; that the premiums accruing from such business were the property of said Pope, and he was responsible for the same to the insurance company. Said Preston testified, that he demanded $288.81, the sum appearing on the paper handed him by Pope, or by Mr. Ide, the state's attorney, showing the balance due the insurance company; that he thought Pope requested him to make the demand upon Hopkins, as he understood it, for the purpose of laying the foundation for a criminal prosecution; that he was authorized to accept nothing less than the $288.81; that the respondent was not well at the time, and was in jail, and remained there for several months.

The indictment alleged that the insurance company was legally doing business in this State.

The first count averred that the respondent appropriated the money on the 25th day of March, 1877; the second, on the first day of July, 1876; and the third, on the first day of October, 1876.

It appeared that October 1, 1875, the respondent and one N. P. Bowman formed a copartnership under the firm name of Bowman & Hopkins, for doing insurance business; that in carrying on their said business they represented twenty-one fire insurance companies, and among the number so represented was the Fire Association of Philadelphia; that they continued to do insurance business as a firm until October 1, 1876, but on account of sickness the respondent left the office on the 6th day of September, 1876, and did not afterwards return to take part in the business transactions of the firm.

The respondent's counsel submitted forty-five requests to the court to charge; but, in view of the decision of the Supreme Court, it is not necessary to state them. The other facts are sufficiently stated in the opinion.

*L. H. Thompson* and *Elisha May,* for the respondent.

There was error in admitting the copy of the commission. *Commonwealth* v. *Wellington,* 7 Allen, 299; 1 Green. Ev. (12th ed.) s. 65; *Commonwealth* v. *Wade,* 17 Pick. 395; *Commonwealth* v. *Trimmer,* 1 Mass. 476; Bish. Stat. Cr. (1st ed.) s. 910; *Commonwealth* v. *Pierce,* 130 Mass. 31; *Moore* v. *State,* 65 Ind. 215; *State* v. *Owen,* 73 Mo. 441; *Williams* v. *People,* 110 Ill. 385- There was error in admitting the memorandum, "no check," 1 Phil. Ev. (C. & H's and Edward's notes) pp. 348, 356; *Doe* v. *Turford,* 23 E. C. L. 390; *Champneys* v. *Peck,* 2 E. C. L. 157; *Reg.* v. *Worth,* 45 E. C. L. 136. In *State* v. *Phair,* the entries were made in the regular course of business. *See* opinions of BLACKBURN, MELLOR and LUSH, JJ., in *Smith* v. *Blakey,* 2 L. R. Q. B. 326; 2 Best Ev. s. 501; *Hadley* v. *Howe,* 46 Vt. 142; *Miller* v. *Wood,* 44 Vt. 378; *Davis* v. *Lloyd,* 1 Car. & Kir. 275; *Kent* v. *Garvin,* 1 Gray, 150; *Hibbard* v. *Mills,* 46 Vt. 243. There was error in admitting the *copy* of Parker's account. *Durkee* v. *R. R. Co.,* 29 Vt. 140; *Tucker* v. *Bradley,* 33 Vt. 328; *Bartlett* v. *Cabot,* 54 Vt. 242; *Reg.* v. *Langton,* 15 Eng. Rep. 369; 1 Green. Ev. s. 436. The State should have proved, as it alleged, that the insurance company was *legally* doing business in this State. *Commonwealth* v. *Martin,* 130 Mass. 467; *Reg.* v. *Hunt,* 8 C. & P. 642; 2 Russ. Cr. (8th Am. ed.) 177, 688; 2 Bish. Cr. L. (5th ed.) s. 339; *Thorn* v. *Ins. Co.,* 80 Penn. St. 15; *Spaulding* v. *Preston,* 21 Vt. 10; *Paul* v. *Verginia,* 18 Wall. 168. A legal notice was not given to pay over the money. Pope was not authorized, much less to delegate his authority, to give notice. Story Ag. ss. 246, 247; *Fisher* v. *Cuthell,* 5 East, 497; *Audley* v. *Pollard,* Cro. Eliz. 561; *Mann* v. *Walters,* 10 Barn. & Cr. 631; *Lyster* v. *Goldwin,* 42 E. C. L. 611;

*Stanton* v. *Blossom*, 14 Mass. 117; Whar. Ag. s. 348; 2 Kent Com. (11th ed.) 633. The respondent should have been informed of Preston's authority. *Phillips* v. *Bridge*, 7 Eng. Rep. 148; 3 Phil. Ev. 592; *Bradstreet* v. *Clark*, 21 Pick 289; *Nichols* v. *Boston*, 98 Mass. 43; *Connor* v. *Bradley*, 1 How. 217; *Rex* v. *Jones*, 7 C. & P. 833. Notice should have been given to both Bowman and Hopkins. *Ilsey* v. *Essex County*, 7 Gray, 465; 2 Kent Com. 633; *Martine* v. *Ins. Co.*, 53 N. Y. 339; *Low* v. *Perkins*, 10 Vt. 532. The charge as to commingling the money was erroneous, in that it did not explain to the jury that consent could be implied from the course of business. *State* v. *Kent*, 22 Minn. 41; 2 Russ. Cr. 182; *Commonwealth* v. *Stearns*, 2 Met. 343; *Commonwealth* v. *Libby*, 11 Met. 64; *Rex* v. *Hodgson*, 3 C. & P. 622; 1 Bish. Cr. L. ss. 298, 303; 2 Ib. ss. 371, 372; *Yates* v. *The People*, 32 N. Y. 509. It was error to charge that it was the neglect to pay over the general balance for thirty days after notice. *Commonwealth* v. *Shepard*, 1 Allen 586. Also error to charge that the question of intent was not involved. Crime proceeds only from a criminal mind. 1 Bish. Cr. L. ss. 205, 207, 286, 290, 303; 2 Ib. ss. 371, 372; *Reg.* v.*Allday*, 8 C. & P. 136; *Smith* v. *Kinne*, 19 Vt. 568; *Rex* v. *Gill*, 1 Str. 191; *Reg.* v. *Reed*, 41 E. C. L. 170; *Robinson* v. *State*, 53 Md. 151; Bish. Stat. Cr. ss. 123, 131, 139, 239, 360, 414, 425; *State* v. *Gregory*, 10 Reporter, 522; *State* v. *Ellis*, 74 Mo. 385; *Jenkins* v. *State*, 53 Ga. 33; *Farrell* v. *State*, 32 Ohio St. 456; *Faulks* v. *The People*, 39 Mich. 200; *Myers* v. *State*, 1 Conn. 502; *Commonwealth* v. *Power*, 7 Met 596; *Commonwealth* v. *Filburn*, 119 Mass. 297; *State* v. *Gilbert*, 16 Reporter, 340. The State charges a felony; it should have proved a felonious intent. 1 Bish. Cr. Proc. ss. 279 291; 2 Ib. ss. 288, 694; *State* v. *Wheeler*, 3 Vt. 347; *Commonwealth* v. *Adams*, 127 Mass. 17. There was such a variance between the agency and appropriation charged, and those proved, that the court should have directed a verdict of acquittal. *Commonwealth* v. *Merrifield*, 4 Met 468; 2 Bish. Cr. L. s. 357; *Fullerton* v. *Seymour*, 5 Vt. 249. The

Court should have compelled the State to choose upon which of the three counts it claimed a conviction. *State* v. *Smith,* 22 Vt. 76 ; 1 Bish. Cr. Proc. s. 211. The respondents should have been allowed to read authorities to the jury. *State* v. *Croteau,* 23 Vt. 14 ; *State* v. *McDonnell,* 32 Vt. 491 ; 10 Met. 285.; 7 Gray, 51 ; 9 C. & P. 362 ; 65 Ga. 308 ; Ib. 759. The statute is unconstitutional. *Ex parte, Westfield,* 55 Cal. 550.

*Harry Blodgett, Belden & Ide* and *Stafford,* for the State.

The copy of the commission was properly admitted. *State* v. *Brown,* 49 Vt. 440. Also the memorandum, "*no check,*" made by the president of the company. *State* v. *Phair,* 48 Vt. 378 ; 1 Smith Lead. Cas. 139, n.; 1 Phil. Ev. (5th ed.) 348. Also the copy of Parker's account. *Weeks* v. *Barron,* 38 Vt. 420. The court has already affirmed the constitutionality of the act in this case. It was not necessary to prove a criminal intent. SHAW, Ch. J., *Commonwealth* v. *Marsh,* 7 Met. 472 ; *Commonwealth* v. *Elwell,* 2 Met. 190.

Clearly analogous to the act under consideration are the Massachusetts statutes prohibiting the sale of intoxicating liquors. Under them it has been uniformly held that the ignorance of the seller as to the intoxicating quality of the liquor he was selling is no defence. *Commonwealth* v. *Boynton,* 2 Allen 160 ; *Commonwealth* v. *Goodman,* 97 Mass. 117 ; *Commonwealth* v. *Hallet,* 103 Mass. 452. The question of intent has been held immaterial in cases under the statute against the sale of adulterated milk. *Commonwealth* v. *Farrer,* 9 Allen 489 ; *See Commonwealth* v. *Emmons,* 98 Mass. 6 ; *Commonwealth* v. *Hudson,* 97 Mass. 565 ; *State* v. *Welch,* 21 Mich. 22 ; 3 Green. Ev. s. 21.

It is wholly in the discretion of the trial court to determine whether the respondent's counsel may read authorities to the jury. *State* v. *McDonnell,* 32 Vt. 532 ; *Commonwealth* v. *Porter,* 10 Met. 284 ; *Commonwealth* v. *Austin,* 7 Gray, 51 ; *State* v. *Hoyt,* 46 Conn. 330 ; *Curtis* v. *State,* 36 Ark. 884 ; *People* v. *Anderson,* 44 Cal. 70 ; Whar. Cr. L. s. 3011 ; *State* v. *Klinger,* 46 Mo. 224 ; *State* v. *Smallwood,* 78 N. C. 560 ; *Franklin* v. *State,* 12 Md. 236. It was in the discretion of the

court to allow Noyes to testify when he did.   *State* v. *Magoon*, 50 Vt. 333; *State* v. *Bridgman*, 49 Vt. 202.   If the respondent objected to the means or mode of proving what Noyes testified to, he should have so stated, and the attention of the court called to it, otherwise the objection is waived.   *Motley* v. *Mead*, 43 Vt. 633; *Weeks* v. *Barron*, 38 Vt. 420; *Matthews* v. *Lecompte*, 24 Mo. 545; *Leet* v. *Wilson*, 24 Cal. 398.   But we insist that the bank books themselves are the proper evidence of the amount of the deposit, after having been identified as the regular depositors' books.   *McKavlin* v. *Breslin*, 8 Gray, 177;   *Cavendish* v. *Troy*, 41 Vt. 99; *Mortimor* v. *McCullom*, 6 M. & W. 58; *Hinkle* v. *Smith*, 21 Ill. 238.   The presumption is, that the company was legally doing business in this State.   *Timson* v. *Moulton*, 3 Cush. 269; *Wilson* v. *Melvin*, 13 Gray, 73; *Trott* v. *Irish*, 1 Allen, 482.   But if the company failed to do its duty, that would be no excuse for the respondent in violating his. *Baldwin Bros.* v. *Potter*, 46 Vt. 402.

The opinion of the court was delivered by

TAFT, J.   I.   It is claimed that the statute under which the respondent stands indicted is unconstitutional.   Its constitutionality was affirmed by this court in a cause entered at the October Term, 1878, in Caledonia County, against this same respondent.

II.   The respondent and one Bowman, as partners under the name of Bowman & Hopkins, were agents of the Fire Association, an insurance company organized under the laws of Pennsylvania.   The indictment makes no mention of the firm, but was found against the respondent alone, in relation to business done in the name of the firm.   There was no reason why he could not have been separately indicted.   He could in the business of the firm commit the offense charged without any reference to his partner.   The fact that Bowman & Hopkins were agents, made the respondent none the less an agent.   The commission of Bowman & Hopkins having been lost, it was not error to admit what was shown to have been a copy of it.

III.   The state claimed that the premiums on the business of

Bowman & Hopkins for certain months in the year 1876 had not been paid. The monthly accounts current for such months were in evidence; and on each of said accounts the memorandum, "*No check,*" had been written, indicating, as was claimed, that no funds accompanied the accounts. This memorandum was admitted in evidence, the respondent excepting. The State claimed that the memorandum was made by the president of the company, Mr. Butler, then deceased. To justify the court in the admission of such evidence it should have been shown that the entry was in the handwriting of Mr. Butler; that he was under an obligation, or that it was a part of his duty, to make the entry, in the regular course of business, and that he was dead. This latter fact was the only one shown; and the admission of the memorandum was error. *State* v. *Phair,* 48 Vt. 366.

IV. A. C. Parker acted as sub-agent of Bowman & Hopkins, and to prove when and how the payment of the premiums on the Green policy was made, the court admitted in evidence a copy of Parker's account. His original book was not produced, nor its loss or destruction shown. We think this was error. The copy of the account might have been used by the witness to refresh his memory; but so long as the original book was in existence it was error to admit the copy as substantive testimony. *Tucker* v. *Bradley,* 33 Vt. 324. It being a mere copy, it was not admissible for any purpose. We are not inclined in so holding to put the case upon the ground claimed by the respondent's counsel, that, not being required to state the ground of his objection, he was not bound to specify it to have his exception avail him, as intimated in *Bartlett* v. *Cabot,* 54 Vt. 242. In the case at bar the copy was not, substantively, evidence, and could not be, for any purpose, until the loss of the original account was shown; and it could not be made so by the failure of the respondent to object to it as a copy.

V. The testimony of A. B. Noyes was not admissible. He testified as to entries made in the books produced as books of the bank; he was not employed in the bank when the entries were made; it did not appear by whom they were made, when

they were made, in whose handwriting they were, or that Noyes had any personal knowledge of them. Such entries, not verified, cannot be testified to by one who has no personal knowledge of them.

VI. Was the prosecution bound to prove that the Fire Association was *legally* doing business in the State of Vermont? We think the decisions in this State in analagous cases warrant us in holding the negative. In *Baldwin* v. *Potter*, 46 Vt. 402, it was held that an agent was bound to account to his principal for money obtained by him as such agent on illegal and void contracts. The same principal was affirmed in *Thayer* v. *Partridge*, 47 Vt. 423. No one should be protected by the law in committing larceny of the property of another, in whatsoever manner the property was acquired. Whether the association was legally doing business in this State or not was immaterial. It was not necessary either to allege or prove it.

VII. A question is made upon the notice given the respondent to pay the company the premiums collected and retained by him. The statute makes the refusal or neglect to pay over money to the party entitled to it, criminal only after thirty days from the time of *notice to make such payment*. It was not necessary to have rendered the notice a valid one that the exact, or indeed any, sum should have been demanded, or that the party giving the notice should have had authority to have received the money or that the respondent should have been in good health, or at liberty, or that it was given in order to found a criminal prosecution upon it, or that Preston should have disclosed the particulars of his authority to give the notice. All that the statute required was that the agent should have had notice to pay the money. In this case there was evidence tending to show notice, and that Preston had authority to give it; and we think the charge of the court on the subject correct.

VIII. Many other questions are made in respect to the charge. We think the court below committed no error in telling the jury that it was not important to inquire whether Bowman had appropriated any premiums to his use; Hopkins was the one on trial,

and it was immaterial what Bowman had done. The question was, had the respondent collected premiums and neglected and refused to pay them over after notice? It was an appropriation to the *use of the respondent* when he applied them to the *use of the firm.* The fact that the agent was entitled to retain fifteen per cent of the premiums gave him no right to the other eighty-five per cent. We perceive no error in the charge in respect to the commingling the respondent's money with that of the company represented by him, and the consent of the company to the use of the premiums by the firm of Bowman & Hopkins. The jury were told that if the company consented to it, then, it amounted to a loan. We think there was but one offense committed by the respondent; not as many as there had been single premiums collected. Although there had been more than one collected they were all in his hands at the time notice was given; but one notice was given, and the offense was created when he neglected for thirty days to pay the balance due the company.

IX. The remaining question in respect to the charge is the one relating to the intent of the respondent in doing the alleged act. Was it necessary that he should have acted fraudulently and feloniously, that he should have had the intent to steal, that he should have "had a heart void of social duty and been fatally bent on mischief?" We think not. "Nothing in law is more incontestable than that, with respect to statutory offenses, the maxim that crime proceeds only from a criminal mind does not universally apply." *Halstead* v. *State,* 12 Vr. (N. J.) 552. Where an act is made indictable, a criminal intent need not be shown, unless from the language or effect of the statute, a purpose to require the existence of such an intent can be seen. Where the law forbids the doing of an act, the intent to do the act is the criminal intent which imparts to it the character of an offense. Convictions of manslaughter are frequent where the only fault in the offenders is that of negligence. For numerous cases where the same doctrine has been held. *See People* v. *Roby,* 17 Reporter, 626, (Sup. Ct. Mich.)

We have noticed all the questions in respect to the charge

made by the brief for the respondent. We have not examined in detail the multitudinous requests made in his behalf. It is difficult to determine whether they were all complied with or not. All the rights of a respondent can be saved without any requests for instructions. It is the duty of the court to charge fully upon all the points of law in the case ; and exceptions can be taken to the charge as given, or the neglect to charge, upon any question. But requests when properly drawn are useful as showing to the court the claims made, the questions which it is desired should be submitted ; and at times are of great aid to the court. " When instructions are asked they should be precise and certain to a particular intent, that the point intended to be raised may be distinctly seen by the court, and that error, if one be made, may be distinctly assigned." *United States* v. *Bank of the Metropolis*, 15 Pet. 406. " The true object of submitting a point to the court is to obtain a clear and reliable instruction to aid the jury in the formation of an intelligent verdict. The court should decline to receive a point when it is so obscurely worded as to confuse rather than enlighten the jury." *McKinney* v. *Snyder*, 78 Penn. St. 497. " A few plain propositions, embracing the law upon the facts of the case, are greatly to be preferred, in every case, to a long string of instructions, running into each other, and involving intricacies, requiring as much elucidation as the facts of the case themselves." *State* v. *Mix*, 15 Mo. 153. Forty-five instructions in this case could not have been required on the part of the defendant for the purpose of having his case presented in a proper manner, and enlightening the jury upon the law ; and if the requests had been fully complied with, in the order in which they were made, they were calculated rather to mislead and confuse them. Where requests made are of such a character that the court is not bound to receive them, exceptions taken to a refusal to charge as requested, should not be considered ; the rights of the respondent can be saved by exceptions taken to the charge as given, pointing out specifically the matter excepted to.

It was not error for the court to permit the witness Noyes to

be examined after the respondent had been directed to put in his defence. The respondent had no testimony; and it is difficult to see how the order in which the State's evidence was given affected him injuriously. The order of the trial, as to the examination of a witness out of time, is always in the discretion of the court, the adverse party having an opportunity of meeting the evidence thus given. This point was so held in *State* v. *Magoon*, 50 Vt. 333 and *State* v. *Potter*, 52 Vt. 33. Under the indictment there was no occasion for the State to elect as to any one offense charged. As we have before said there was, under the evidence as given, but one offense, and that arose when the thirty days elapsed after the notice given him to pay over the balance in his hands. There was no evidence tending to show several distinct and independent felonies, and therefore no occasion to apply the rule contended for.

The question is made as to the respondent having received for the company a substitute for money and not money itself; and it is claimed that evidence of a receipt of checks does not support the allegation in the indictment of a receipt of money. If the respondent received in payment of a premium, a bank check, and collected the check this would constitute a receipt of money, and would support the indictment in that respect. The jury, we think, were not misled in this matter; they were told to inquire whether the respondent *received money;* witnesses testified they had *paid him money*, and the court repeated the question, "Do you find that he did *receive the money?* that it came into his custody? and did he receive it as such agent?" A jury would have been dull indeed, who could under such a charge have been misled, and have convicted a respondent for receiving a *substitute* for money, instead of money.

The court "ruled that counsel had not the right in a criminal case to read such authorities as he chose to the jury, nor to read authorities generally." We think this is a correct proposition. It is a matter wholly in the discretion of the court. We see no good object in so doing in any case. The better rule is to pro-

State v. Hopkins.

hibit it entirely; it can only tend to confuse the jury in their ideas of the law. It does not follow that because the jury are judges of the law, that counsel can read what they please to them. This rule that the jurors are judges of the law does not affect the course or order of procedure of the trial in the least; it is the result of the *power* of the jury rather than of any abstract inherent *right*, and the trial should be conducted in the usual course of proceedings. The reading of law from the books, even by the court, whose duty it is to instruct the jury as to the law, was criticised in *State* v. *McDonnell*, 32 Vt. 491, where the court say : " One might almost as well, for any purpose of actual enlightment, give the jury a general treatise upon criminal law, and tell them the whole law applicable to the case would be found under the title *homicide*, or *manslaughter* and *murder*." My own impression is, that counsel are not at liberty to insist to the jury that the law is different from that given by the court. As well might they argue to them the questions of the admission or rejection of evidence and many other legal ones arising upon the trial; and this view is not at all inconsistent with the fact, that, by the power of the jury to render a general verdict, they virtually become judges of the law.

The remaining question arises upon the motion to set aside the verdict for the reason that the officer having the jury in custody, was present with them during their deliberations. The oath administered to an officer in charge of the jury in a criminal case contains the provision that he will suffer no person to speak to them or speak to them himself concerning the cause on trial or any matter thereto relating. It does not appear in this cause that any conversation was had by the officer with any one of the jurors; and we do not see how the respondent could have been prejudiced by his mere presence in the performance of his duties in keeping the jurors together. What the effect of his conversing with them in relation to the case on trial would be, we are not called upon to decide.

For the errors indicated, the exceptions are sustained, judgment reversed, verdict set aside, and cause remanded for trial.