# RUTLAND RAILROAD CO. v. JOEL M. HAVEN.

*General assumpsit. Overissued stock. Principal and agent.*

1. A corporation may recover in general assumpsit from its treasurer the money which he has received from the sale of its stock, fraudulently overissued by him, where such spurious stock has become so intermingled with the genuine as to be indistinguishable, and the corporation has been compelled to and has treated it as genuine.

2. Although the stock, when issued, may have been absolutely void, and the issuing of it a crime, the treasurer cannot allege the illegality of his act as a reason why he should not pay over the money.

3. The treasurer having been adjudged an insolvent after the institution of the suit, the claim may be presented against his estate, being a debt provable within the statute.

This was a suit in general assumpsit. Plea, the general issue. Trial by court at the March Term, Rutland County, 1888, TYLER, J., presiding. Judgment for the plaintiff. Exceptions by the defendants.

The suit was begun June 22, 1883, against the defendant Haven. July 15, 1883, Haven was adjudged insolvent, and the defendant, Cramton, appointed his assignee. The cause was thereafterwards prosecuted to final judgment by order of the Court of Insolvency under R. L. s. 1797, the assignee entering to defend.

Haven was the treasurer of the plaintiff, and as such acted as its transfer agent and had entire control of its stock books. The books were a transfer book, stock ledger and certificate book, and their use in the transfer of stock was as follows :

The transfer was made upon the transfer book and signed by the transferrer, either in person or by attorney, and it was customary for the transferrer to execute a power of attorney, often in blank, so far as the name of the attorney was concerned, either on the back of the original certificate or on a blank for

that purpose, authorizing another person, and very frequently the transfer agent of the company, to execute the transfer on the transfer book, in the name of and for the transferrer. When the transfer upon the transfer book was made, the shares transferred were, in the ordinary course, passed to the credit of the transferee in his account on the stock ledger, and were entered to the debit of the transferrer's account on the ledger. If the shares transferred were represented by an outstanding certificate, such old certificate was required to be surrendered before a transfer of the shares on the transfer book could properly be made by the transfer agent, and upon the surrender of such old certificate, if there was one, or immediately upon the transfer, if there was no outstanding old certificate, the transferee became entitled to a certificate of the number of shares transferred to be issued to him from the certificate book, which certificate, under certain votes of the company, was required to be signed by the president and treasurer, but in practice the president signed the certificates in blank in the book, and left the same with the treasurer, to be signed by him and issued when a transferee was entitled to the same.

In order to authorize a transfer of shares on the transfer book, the transferrer must have had the number of shares transferred standing to his credit, and if there was an outstanding certificate therefor, the same must have been surrendered. In such case the treasurer was authorized to allow the transfer to be made and to sign and issue a new certificate for the shares transferred to the transferee; but if the shares transferred were not standing to the credit of the transferrer, or if they were so standing to his credit, and a certificate was outstanding therefor, which was not surrendered, the treasurer had no authority to allow the transfer to be made on the transfer book, nor to sign and issue a certificate to the transferee therefor.

The certificates of stock themselves provided that the stock should only be transferred by written transfer upon the books of the company by the owner or his attorney, upon presentation of the certificate and the surrender of the same.

Rutland Railroad Co. v. Haven.

It appeared that the plaintiff Rutland Railroad Co. was organized for the purpose of enabling the second mortgage bondholders to avail themselves of their security. The charter provided for the issue of a common and preferred stock. By the express terms of the charter the preferred stock was only to be issued upon the payment of an equal amount of prior indebtedness against the property. On the 21st day of October, 1872, this preferred stock had, in accordance with regular votes of the company, been issued to an amount exceeding 43,000 shares. On that day the directors voted that it should be reduced to that number and should not afterwards exceed it. The records of the corporation did not show that this action was ever modified, but in fact, previous to the issue of any of the overissued stock involved in this case, the number had been reduced to 40,000 shares. This number was never increased by corporate action. The number of shares outstanding at the time of the trial, including the spurious stock, was 42,391.

The charter provided for the issue of common stock to the amount of 30,000 shares. This stock has never been issued up to the charter limit, and at no time has it, including both the genuine and spurious, ever reached that amount. The exact amount of common stock outstanding, authorized by the corporation, is 25,000; the total overissue of common stock, 495 shares.

Haven, between October 10, 1879, and November 16, 1882, engaged in a series of fraudulent transfers of this stock, in the course of which he issued and disposed of large numbers of the certificates of both the preferred and common stock. These certificates, on their face, purported to be genuine, were executed and signed in the same manner as the genuine certificates, and were indistinguishable from them. The manner of the overissue was this :

Several stock brokers, by the direction of said Haven, offered for sale in the market and sold for him and on his private account shares of preferred and common stock, and received from the purchasers thereof, as the avails of such sales, the market price

of such stock, and remitted such avails to Haven as his private property, which avails were received and used by Haven as his private property.

When sales were made by the brokers, said brokers issued powers of attorney authorizing transfers by them on the transfer books of the company of the shares sold to the respective purchasers, and these powers were delivered to Haven as treasurer, either by the purchasers or by the brokers, with a request that the stock sold might be transferred upon the transfer book of the company. On receipt of these powers of attorney, Haven, as treasurer, made or allowed to be made transfers of the shares sold by the brokers, by virtue of said powers, upon the transfer book of the company to the purchasers, and passed the said shares to the credit of the several purchasers upon the stock books, and signed, issued and delivered to the purchasers respectively certificates for said shares. At the time of said several transfers there were no shares standing to the credit of the brokers upon the books of the company, neither were there any outstanding certificates surrendered to justify the transfers, so that the transaction resulted in an actual issue of certificates representing shares of stock in excess of the stock of the company then outstanding equal to the number of shares so sold and transferred.

The plaintiff had no knowledge of these transactions at the time. When the fact of the overissue was first known to it, much of this spurious stock had already, by repeated subsequent transfers, become so intermingled with the genuine stock as to be indistinguishable from it, and at the time of the trial all of it was.

The purchasers of this spurious stock bought the same in open market and paid the full market value for it, and there was no evidence tending to show that they had any reason to suspect that it was other than the genuine stock of the corporation. Dividends have uniformly been paid on this spurious as on the genuine stock, those accruing previous to April 27, 1883, having been paid by Haven himself as treasurer.

Rutland Railroad Co. *v.* Haven.

It was for the money actually received by Haven as the avails of these sales that the plaintiff sought to recover in this action. The defendants contended that the action of Haven in issuing these certificates was a tort, for which a proper action might lie, but that no debt was thereby created which could be proved against his insolvent estate or enforced in an action of assumpsit against him.

The court held for the plaintiff and gave judgment for the amounts received by Haven, with interest from the time when received to the date of the filing of the petition in insolvency.

*P. R. Kendall, J. C. Baker* and *Cross & Start*, for the defendants.

The question is, can the plaintiff prove this claim as a debt against Haven's insolvent estate ? and this is to be determined by the inquiry :   Can it maintain an action of general assumpsit against Haven for its recovery ?   We contend that it cannot ; that its only remedy against him is in tort.

By the issuing of these certificates he committed a crime.   R. L. s. 4160.

He was liable to the corporation in tort.   Story Agency, s. 217c ; 1 Add. Torts, par. 27 and note ; Mor. Corp. ss. 67, 91, 331 ; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *B. Bank* v. *N. Y. & N. H. R. R. Co.*, 30 Conn. 231.

This action in tort was a full and complete remedy.   *B. & A. R. R. Co.* v. *Richardson et al.*, 135 Mass. 475.

And the plaintiff cannot, in a case like this, waive the tort and sue in assumpsit.   *Jones* v. *Byard*, 7 John. 152 ; *Bydow* v. *Jones*, 10 Pick. 165 ; *Saville, Somes & Co.* v. *Welch*, 58 Vt. 683 ; *State* v. *St. Johnsbury*, 59 Vt. 332 ; *Kidney* v. *Persons*, 41 Vt. 386.

That can only be done where the property of the plaintiff has been converted into money.   These certificates were never property at all.   They were at first, and always have been, and always must be, utterly void.   The corporation had no charter-power to issue this preferred stock, and having no power to issue

it, cannot ratify the issue when made. *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30 ; *Scovil et al.* v. *Thayer*, 105 U. S. 43.

The overissue of this stock was solely a tort of Haven, and the plaintiff should not be allowed to convert it into a contract, for the purpose of proving its claim against his estate.

*C. A. Prouty* and *Stewart & Wilds*, for the plaintiff.

An action for money had and received will lie when the defendant has in his hands money which, in equity and good conscience, belongs to the plaintiff; and this is so although the defendant obtained the money as the result of a tort. *Moore* v. *Mandelbaum*, 8 Mich, 433; *Lockwood* v. *Kelsey*, 41 N. H. 185 ; *Elwell* v. *Martin*, 32 Vt. 222 ; Bish. Con. s. 186; 1 Chit. Pl. 362, *passim* and note (2); Roberts' Vt. Dig. Assump. 9 ; *Marsh* v. *Keating*, 1 Bing. N. C. 198 ; *Gaines* v. *Miller*, 111 U. S. 395.

If this stock had been, when issued, the valid stock of the plaintiff, clearly this action would lie, and the same result would follow if, although invalid then, it afterwards became valid.

See cases above cited.

The overissued stock is now valid. It has been for years treated as such by the plaintiff. Courts will treat as valid corporate acts which are primarily *ultra vires* where the rights of innocent third parties have intervened, and the act is not *malum in se.* Mor. Corp., ss. 600, 648, 654, 678, 680, 686, 689, 698 ; *Bradley* v. *Bullard*, 55 Ill. 413 ; *Nat. Bank of St. Louis* v. *Matthews*, 98 U. S. 621 ; *Nat. Bank of Genessee* v. *Whitney*, 103 U. S. 99 ; *Ellsworth* v. *Railroad Co.*, 98 N. Y. 553.

This rule has been applied to an issue of stock beyond the charter limit. *Machinists Bank* v. *Field*, 126 Mass. 345 ; *Pratt* v. *Machinists Bank*, 123 Mass. 110.

The case shows that the preferred stock had been issued and was outstanding previous to any of these overissues, to the amount of 43,000. The presumption is that this issue was valid. Mor. Corp., ss. 40, 75, 76, 324, 602, 603 ; *Gelpeke* v. *Dubuque*,

Rutland Railroad Co. *v.* Haven.

1 Wall. 175; *Ellsworth* v. *Railroad Co.*, 98 N. Y. 553; Green's Brice's Ultra Vires, 38, note (a); *Chautauqua Co. Bank* v. *Risley*, 19 N. Y. 369; *New York Firemen's, etc., Co.* v. *Sturges*, 2 Cow. 664; *Safford* v. *Wyckoff*, 4 Hill, 442; *Ex parte, Penn. Iron Co.*, 7 Cow. 540; *Farmers' L. & T. Co.* v. *Perry*, 3 Sandf. Ch. 339; *McFarland* v. *Triton Ins. Co.*, 4 Denio, 392; *Mitchell* v. *Rome R. R. Co.*, 17 Ga. 574; *Dana* v. *Bank of St. Paul*, 4 Minn. 385; *Bank of Manchester* v. *Allen*, 11 Vt. 302.

If the corporation could reduce this number, it certainly could reissue what had been retired. But the whole of the preferred stock now outstanding is only 42,391 shares. Hence the company had the power to issue these spurious shares, and having the power to issue, may ratify when illegally issued. Mor. Corp., s. 114 and note 4.

The authorized issue of preferred stock was 40,000 shares. The charter-limit of the common stock, 30,000, in all, 70,000. The amount of preferred and common stock now outstanding, including the overissues, is less than this number. Now, a corporation having authority to issue so much stock may issue it as either a common or preferred stock, or may convert the one kind into the other, and such action cannot be questioned when acquiesced in by the stockholders. The preference being for the benefit of the stockholders exclusively, they may waive it. *Kent* v. *The Quicksilver Mining Co.*, 78 N. Y. 187; *Taylor* v. *The South & North Ala. R. R. Co.*, 4 Woods, 575; *Hazelhurst* v. *Savannah, etc., R. R. Co.*, 43 Ga. 13; *Evansville, etc., R. R. Co.* v. *Evansville*, 15 Ind. 395; *Lockhart* v. *Van Alstyne*, 31 Mich. 76; *Branch* v. *Jessup*, 106 U. S. 481; *Bard* v. *Baingan*, 6 Ry. & Cor. Law Jour. 170; *Payson* v. *Stoerer*, 2 Dill, 428; *Noyes* v. *R. & B. R. R. Co.*, 27 Vt. 113; Mor. Corp., s. 672; *Phosphate of Lime Co.* v. *Green*, L. R. 7 C. P.; Mor. Corp., ss. 463, 464.

It is in no wise material whether this stock is valid. The case finds that it is in fact indistinguishable from the genuine, and that the corporation was compelled to and did treat it as

valid. Haven was the agent of the plaintiff, and neither he nor his representative can now allege the illegality of his act as a reason why he should not pay over this money. *Evans* v. *Trenton*, 4 Zab. 773; *Baldwin Bros.* v. *Potter*, 46 Vt. 402 ; 2 Saund. 396 ; *Tenant* v. *Elliot*, 1 B. & P. 3 ; *Hinsdill* v. *White*, 34 Vt. 558 ; *Thayer* v. *Partridge*, 47 Vt. 423; *Norton* v. *Blinn*, 39 Ohio St. 145 ; *German, etc.,* v. *Slegner*, 21 Ohio St. 488.

The opinion of the court was delivered by

TAFT, J. The defendant Haven was treasurer of the plaintiff company and acted as its agent in the transfer of its stock and in the issue of its certificates therefor. He fraudulently issued and sold large quantities of the plaintiff's capital stock, putting the certificates therefor into circulation. The fraudulent stock became so intermingled with the genuine as to be indistinguishable from it, and the plaintiff has been compelled to, and does, treat it as genuine. Haven received the purchase price of the stock he so sold, in money. The certificates, when made, were the property of the plaintiff, and the money received by Haven for them was the money of the plaintiff. The result of Haven's acts made the overissued stock legal ; the company was compelled to recognize it, and when Haven received money for it, in equity and good conscience it belonged to the plaintiff. Conceding the illegality of the overissued stock, Haven, being agent of the plaintiff, could not allege its illegality as a reason for not paying the plaintiff the money he received for it. This rule has been applied in many cases in this State. *Baldwin Bros.* v. *Potter*, 47 Vt. 423; *State* v. *Hopkins*, 56 Vt. 250.

The plaintiff, waiving the torts of Haven, may recover the moneys received by him, in an action of general assumpsit. The principles which underlie this action, in cases like the one under consideration, have been so fully and clearly stated by ROWELL, J., in the late case of *State* v. *St. Johnsbury*, 59 Vt. 332, that it is needless to discuss them here.

*Judgment affirmed.*