State *v.* Barron.

---

THE STATE OF VERMONT *v.* ASA T. BARRON.

*Intoxicating Liquor. Evidence. Criminal Law.*

In a prosecution for furnishing intoxicating liquors contrary to law, the government had proved by several witnesses that they had drank liquor in rooms in the respondent's public house on public occasions, when asked to do so by parties occupying such rooms, but did not know where the liquor came from. *Held,* that evidence on the part of the respondent to show the habit of gentlemen, in travelling about the country, to carry spirituous liquors in bottles with them, was inadmissible.

It is competent to prove by an officer who was furnished with a subpœna to serve on government witnesses, that they were sent away so he could not summon them; but his testimony that he heard that they were away, and did not look for them, but understood they had been gone a short time, would not be admissible.

*It seems,* that the rule is well settled in this state that in criminal cases the jury are the judges of the law.

State *v.* Barron.

Whether *ale* is intoxicating or not, is not a question of law, but of fact, and the question may be submitted to the jury without evidence to show that it is intoxicating.

Where liquor is furnished in answer to a single call, at the same time, and by a single act, it can constitute but one act of furnishing, and the party incurs but one penalty, notwithstanding it may be drank by more than one person. But where the liquor is furnished either on a single call, or more, if it be done at different times and by separate acts, no matter how closely these several acts may follow each other in point of time, each act of furnishing constitutes a separate offence, and subjects the party to a separate penalty, whether the liquor be all drank by the same person or by different persons.

THIS was a prosecution by indictment for selling and furnishing intoxicating liquors contrary to law. Plea, not guilty. Trial by jury, May Term, 1863, BARRETT, J., presiding.

The government gave evidence tending to show, that the respondent is the keeper of a public house at White River Junction, in Hartford, in said county, called the " Junction House," and that in said house there is a room, adjoining the bar room, called by the witnesses the cloak room, and that in a cupboard in this room bottles containing spirituous liquors were kept, with glasses, &c.

The government introduced several witnesses who testified in substance, that they had drank liquor in said room in company with and upon the invitation of others, but they did not know who paid for the liquor, or whether it was paid for, and did not know who waited upon them. Some of the government witnesses also testified that they had been asked to drink by gentlemen in their rooms in the respondent's house, and had drank liquor in their rooms, but did not know who provided the liquor. None testified to any instance of sale or furnishing of liquor to the persons who drank, by the respondent in person. One witness testified that he had drank ale in said house.

The respondent offered on cross examination of witnesses introduced by the government, to ask if it was not the habit of gentlemen in traveling about the country, to carry spirituous liquors in bottles with them. This was objected to by the prosecution, and excluded by the court, to which the respondent excepted.

The government called Jasper Hazen, the officer who served the subpœna on the government witnesses in this case, and stated that they expected to prove by him that two of the respondent's clerks,

Andrews and Tinkham, whose names were in said subpœna, to be summoned by him, had been got out of the way so that he could not summon them. To this the respondent objected, but the court overruled the objection and permitted the witness to testify, to which the respondent excepted. The witness testified that he heard that Andrews and Tinkham were not at the Junction, and he did not look for them ; that he understood that they had gone to Boston—did not learn how long they had been gone—understood a short time. To this testimony as given the respondent excepted.

The respondent requested the court to charge the jury, 1st—That the respondent could not be found guilty under this indictment unless the jury found that he either sold or furnished the intoxicating liquors himself, or that the same was sold or furnished by some clerk, servant, or agent of his. 2d—That the respondent could not be found guilty under this indictment for selling or furnishing ale, as the same is not " intoxicating liquor " within the meaning and intention of the law. 3d—That in the cases where two or more persons drank together, one of them calling for the liquor and asking the others to drink with him, that this constituted but one act of selling or furnishing, and but one offence.

The court declined to charge the jury as requested in the second and third requests.

As to the second request, the court told the jury that the jury in criminal cases are judges of the law as well as of the facts, and would leave it for them to say, whether ale is intoxicating liquor or not, within the prohibition of the statute.

The jury on returning their verdict stated that they found four offences for furnishing ale.

The charge of the court as to the third request, is fully stated in the opinion.

To the charge on the subject of the second and third requests the respondent excepted.

The jury returned a verdict of guilty of thirty-six offences.

Converse & French, for the respondent, maintained in respect to the third request, that the charge of the court was entirely erroneous as to the number of offences for which the respondent could be convicted.

The law imposes a penalty against any person who "*shall sell, furnish, or give away any intoxicating liquor in violation of this act.*" Sec. 5. By Sec. 18, "*every distinct act of selling, furnishing or giving away may be proved, and the court shall impose a fine for each offence.*" Acts of 1852, p. 19.

What is a "*distinct act of selling, &c.?*" What is "*each offence?*" Does not the dealer sell it to the person who *calls for it?* Is not the *offence* spoken of in the statute in furnishing it to each person? The person calling for the liquor *pays for it*, and the transaction is wholly *between him and the dealer*. The person calling for the liquor may do what he pleases with it; he can treat a friend with it, and *it is he who furnishes it to the third person; not* the dealer.

*Charles P. Marsh*, State's Attorney, for the prosecution, maintained as to the third request, that: If Barron was the owner of the liquor when it was poured from the bottles, then most certainly each distinct act of pouring into a separate vessel or glass for sale or furnishing, was a distinct offence against the law.

Who is guilty of the several furnishings or sales when ten men come up to his counter or cup-board and drink, if not the respondent? Who else furnishes the liquor. Who else receives the pay? And does it make any difference in the eye of the law or in Barron's profits whether one man calls for ten glasses of rum for ten different people and pays for the ten, or whether each of the ten calls for the liquor at the same time, and each man pays for his glass? *Barron or his clerk makes the delivery in each and all of the cases; and on Barron's premises.*

PIERPOINT, J. The first question presented by the exceptions, is as to the admissibility of the evidence offered by the respondent to show "the habit of gentlemen in traveling about the country to carry spirituous liquors in bottles with them." The government had proved by several witnesses that they had drank liquor in rooms in the respondent's house, on public occasions, when asked to do so by parties occupying such rooms, but did not know where the liquor came from. It was to meet this class of testimony that the offer was made. The court rejected the testimony, and we think properly. Such evidence would be quite too remote and indefinite to warrant a

State *v.* Barron.

jury in drawing any inference therefrom, as to the source from which the liquor came that they drank upon the occasions referred to. If the offer had been to show that the guests who visited *this house* were in the habit of bringing their liquor with them, and furnishing it to their friends in their rooms, it might have been admissible as tending to show the source from which the liquor came, that the witnesses drank, and as rebutting the inference that would otherwise arise, that it was obtained in the house, of the proprietor; but the simple fact that travelers are in the habit of carrying liquor with them, has not, legitimately, any such tendency.

The second question, is as to the admissibility of the testimony of Jasper Hazen, the officer who subpœnaed the government witnesses. What the prosecution offered to prove by this witness was clearly admissible as tending to show that the respondent had been instrumental in causing his two clerks to be absent, so that they could not be used as witnesses against him. If any one had "got them out of the way," the inference would have been that it was done through the respondent's agency, as no other person would have had any interest in producing such a result. But the testimony given by Hazen did not come up to the offer, and was not admissible. He states no fact of his own knowledge. He simply states "that he heard that the clerks were not at the Junction, and he did not look for them; that he understood they had gone to Boston." After the testimony was given it was again objected to, but was not excluded. We think the court should have told the jury that this evidence must be laid entirely out of the case as being inadmissible and incompetent to establish any fact against the respondent; but being received and the jury allowed to consider it, it was well calculated to create a prejudice against him, and might have contributed materially to the result. In this we think there was error.

In the third place it is insisted that the court erred in submitting the question to the jury whether or not ale is intoxicating. It is claimed that this is a question of law and should have been decided by the court, and a labored and learned argument has been made to satisfy us that the jury are not judges of the law in criminal cases. We think the rule is now well settled in this state that in criminal cases the jury are the judges of the law. It is the duty of the court

State *v.* Barron.

however to instruct the jury as to the law applicable to the case on trial, and if the jury disregard the instructions or mistake the law, and render a verdict that is clearly in violation of law, the court may for that reason set aside the verdict, if the respondent is convicted. With these restrictions upon the power of the jury, the evils that are apprehended as the result of the rule, will be found to exist we think only in the imagination; but this question does not arise in the case. Whether ale is intoxicating or not, is not a question of law, but of fact, and is peculiarly within the province of the jury.

But it is said, if it be regarded as a question of fact, then the court erred in submitting it to the jury, as there was no evidence to show that ale is intoxicating.

There is a class of liquors or liquids that are universally conceded and known to be intoxicating. Some contain a greater proportion of the intoxicating properties than others. Wine is less intoxicating than brandy, yet one is as universally acknowledged to be an intoxicating liquor as the other. So with ale; everybody understands that it is intoxicating, and that it comes within the provisions of the statute that prohibits the sale of all intoxicating liquor. When the government in a prosecution for the violation of the statute, proves the respondent guilty of selling or furnishing any of this class of liquors contrary to the statute, that is sufficient to warrant the jury in finding him guilty of selling or furnishing *intoxicating* liquor. There is no more occasion for requiring affirmative proof that ale is intoxicating, than that brandy is intoxicating, or that gunpowder is explosive. The jury are at liberty to act upon the knowledge they possess upon the subject in common with all the rest of mankind. It is possible that ale may be manufactured with so small a proportion of the intoxicating properties, as not to come within the class that are denominated *intoxicating liquors.* If so it must form an exception to the general rule, and if a respondent would avail himself of such a fact, it is incumbent upon him to prove it.

It is further insisted that the county court erred in their construction of the statute as to what constitutes a distinct offence under it, subjecting the offender to the penalty. The court told the jury "that

in case of one or more persons drinking intoxicating liquor, furnished or sold by the respondent, upon the invitation and call of another, the furnishing or selling what was drank by each person would constitute a distinct offence, when no definite portion, as a bottle, or pint or quart, or other definite portion of the liquor was set apart and appropriated to and became the property of the person calling for it, and when upon the call a bottle or bottles containing the desired liquor was set down and each poured out what he saw fit, leaving the remainder the property of the respondent."

The jury by their verdict found the respondent guilty of thirty-six acts of furnishing, and no acts of selling, so that the question here is what constitutes a distinct act of furnishing.

The statute provides that if any person, &c., shall sell, furnish or give away any intoxicating liquor, &c., he shall forfeit and pay for *each offence* the sum of ten dollars.

We think the county court in the charge to the jury laid down a rule broader than the statute will warrant; the extent of the forfeiture incurred by the respondent is made to depend not upon an act of his, in furnishing liquor, but upon the act of the person to whom it has been furnished after it has been placed at his disposal. When liquor is called for and furnished by the person on whom the call is made, the act of furnishing is complete, and the penalty is incurred, and it does not constitute a new and independent act of furnishing on the part of the person furnishing it, if the person to whom it is furnished allows another to partake of it with him. That depends upon his will, and is an act for which he is responsible, and not the person who supplies the liquor. Where liquor is furnished in answer to a single call, at the same time, and by a single act, it can constitute but one act of furnishing, and the party incurs but one penalty, notwithstanding it may be drank by more than one person. But where the liquor is furnished either on a single call, or more, if it be done at different times and by separate acts, no matter how closely these several acts may follow each other in point of time, each act of furnishing constitutes a separate offence, and subjects the party to a separate penalty, whether the liquor be all drank by the same person or by different persons.

Under the charge of the court it is possible the jury may have found the respondent guilty of several acts of furnishing, when under the construction which we put upon the law there was in fact but one.

A new trial is granted