The opinion of the court was delivered by
THOMPSON, J.
The witness Potter was an important witness for the prosecution. He had slaughtered the cattle named in the indictment. He testified that he bought them of' respondent. The respondent claimed this testimony to be untrue, and as showing a motive on the part of Potter to falsify in this respect, offered to prove that Potter, had been arrested on the charge of stealing the cattle in question. The evidence offered was excluded. In this there was error. If Potter had a motive to testify falsely, it rendered the proof of the claim that he had done so, more probable. If he was under' suspicion of having committed the identical crime in question, and had been arrested for it, he was testifying as it were with a rope about his neck, and might naturally desire and seek to screen himself in the account he gave as to how the cattle came into his possession. It has been repeatedly held by this court, that “All facts and circumstances upon which any reasonable inference or presumption can be founded as to the truth or falsity of the issue or of a disputed fact, are admissible in evidence.” Richardson v. Turnpike Co., 6 Vt. 496; Randall v. Preston, 52 Vt. 198; Beckley v. Jarvis, 55 Vt. 348; Aiken v. *5 Kenison, 58 Vt. 665 ; Tufts v. Town of Chester, 62 Vt. 356; Armstrong v. Noble, 55 Vt. 428 ; Tenney v. Harvey, 63 Vt. 520.
II. The evidence of Warren Bailey tended to prove that his general knowledge of respondent’s witness, Clark Spaulding, was such as to include a knowledge of his reputation for truth and veracity, and it was not error to allow Bailey to state what Spaulding’s reputation was in that respect.
III. The State’s Attorney put a question to respondent’s witness, Mary Poor, which the court ruled she might answer, to which ruling the respondent excepted. Upon the refusal of the witness to answer the question, it was not insisted upon and was not answered. It is not necessary to decide whether the question was proper or not. Were it assumed to be improper, the defendant’s exception cannot avail him. A judgment will not be reversed because an improper question is asked, if no inadmissible evidence is obtained in answer to it, Randolph v. Woodstock, 35 Vt. 291; Carpenter v. Corinth, 58 Vt. 214; Smith v. Insurance Co., 60 Vt. 682.
IV. The respondent requested the court below to charge the jury that “ in a criminal case the jury are judges of the law applicable to the case upon the testimony given in court, and that the jury have a right to adopt their own theory of the law, instead of the law as laid down by the court.” The refusal of the court to charge as requested, raises the question whether in criminal cases, the jurors are paramount judges of the law as well as of the fact.
In 1829, this question was incidentally before this court in State v. Wilkinson, 2 Vt. 480, but no authorities were cited in the opinion of the court on this question, and the charge of the court below was so construed as not to raise it for decision.
In 1849, in the case of State v. Croteau, 23 Vt. 14, the *6 question was raised for decision, and a majority of the court held that in all criminal cases, the jury are, by the common law, the paramount judges both of the law and the facts. The court consisted of Royce, Ch. J., and Bennett, Kellogg and Hall, JJ. Bennett, J., dissented from the holding of the majority, in an opinion both able and vigorous.
In 1850, the case of State v. Woodward, 23 Vt. 97, was decided. Royce, Ch. J., and Redfield and Kellogg, JJ., constituted the court. In this case; the respondent was indicted for a nuisance by inclosing a portion of a public common in the town of Westford. The respondent contended that it was for the jury to say whether the act complained of constituted a nuisance. On this point the court said: “It is argued that the question, whether the act charged upon the respondent was a nuisance, should have been submitted to the jury, and in support of it several cases are cited, which are claimed as sustaining the proposition. Whether, in cases of this kind, the question should be put to the jury must depend upon the character of the nuisance charged in the indictment. If the act complained of does not divest the property, or any part of it, from the use of the public, or in any manner impair the public use and enjoyment of it, but the act was done for the purpose of making the use more beneficial to the public, there would seem to be a manifest propriety in submitting the same to the jury. And the cases which we have examined, where the question has been submitted to the jury, seem to have been of this character. But where the act complained of is the taking of property dedicated to the use of the public, and appropriating it to private use, thereby wholly excluding the public from the enjoyment of it, we are not aware of any rule of law, that requires such an act to be submitted to the jury, to say whether it is a nuisance. Such is the character of the act with which the respondent is charged; and in the judgment of the court, it is if so facto, in law, a nuisance, *7 for the commission of which there can be no justification.” It is difficult to see how this holding can be reconciled with the doctrine adopted without reservation or exception in State v. Croteau, supra.
In State v. Paddock, 24 Vt. 312, heard in 1852, and which was a prosecution for selling spirituous liquors, the court below “ directed the jury to return a verdict of guilty, for each act of selling,” to which the respondent excepted. In passing upon this exception this court say : “ It is argue'd that the jury, in cases of this character, are judges of the law and fact, and that under this charge that right was taken from the jury. In criminal cases it is the duty of the court to aid and instruct the jury, and decide upon the law arising in the case. But the jury are the ultimate judges of both the law and the fact, and this right cannot be taken from them. * * * * If it appeared that the court were requested to charge or inform the jury that they were the judges of the law and the fact, and the court neglected or refused so to do, and directed them as to the verdict they were to bring in, the exceptions would have been well taken. But as the matter now rests, that direction in the choice of the court, must be considered as an expression simply of his opinion of the law in the case, and which it was his duty to give, and as informing the jury that it was their duty to return such a verdict, without in any way controverting their ultimate right of exercising their own judgment in the case. For the want of positive error, affirmatively appearing in the exceptions, this objection is overruled.” If the jury had the legal right to ignore the instructions of the court, and substitute their own judgment as to the law for that of the court, it could not have been their legal duty to return such a verdict as the court directed. Hence, the court in this case is left in the position of holding that it is not error for the court below to charge the jury that it is their duty to do a thing, although it is not their legal duty to *8 to do it. Again, it- is not easy to reconcile the reasoning in this case with the well settled rule in this State, that “it is the duty of the court to charge fully upon all the points of law in the case,” without being requested to do so. State v. Hopkins, 56 Vt. 250.
In State v. McDonnell, 32 Vt. 491, decided in January, A. D. 1860, and which was an indictment for murder, the court below instructed the jury that they were the judges of the law and the facts under the law of this State, but that it was “ a most nonsenical and absurd théory,” and that the jury ‘ ‘ would be amply and iully justified in relying upon the court for the law that should govern the case, and holding them accountable for that.” This was urged as error, in this court, but the objection was not sustained. In passing upon this exception the court said : “ We see no objection, where the interference of a jury is directly invoked in a criminal case, to the judge stating to the jury, in his own way, that this rule is not intended for ordinary criminal cases ; that it is a matter of favor to the defendant, and should not Be acted upon by the jury, except after the most thorough ■conviction of its necessity and propriety ; that any departure by the jury from the law laid down by the court, must be taken solely upon their own responsibility; and that the .safer, and better, and fairer way, in ordinary criminal cases, is to take the law from the court, and they are always justified in doing so. This is substantially what was done by the court below, and we see no just ground of exception to the mode in which it was done.”
In State v. Haynes, 36 Vt. 667, while the rule laid down in State v. Croteau, supra, was recognized, it was held that records of former convictions, to enhance the penalty, need not be ofFered to the jury, as the law then stood, but might be introduced after verdict to affect the sentence only. '.Poland, Ch. J., in delivering the opinion of the court said :
To say that the defendants must have an opportunity to *9 have this question of law submitted to the jury, so as to have the benefit of the chance of their deciding it contrary to law, seems to us a very great absurdity.”
In State v. Barron, 37 Vt. 57, decided in 1864, the court said : “ We think the rule is now settled in this State that in criminal cases the jury are judges of the law. It is the duty of the court, however, to instruct the jury as to the law applicable to the case on trial, and if the jury disregard the instructions or mistake the law, and render a verdict that is clearly in violation of law, the court may for that reason set aside the verdict, if the respondent is convicted.” The court thus in effect held that jurors are judges of the law to acquit, but not, in the discretion of the trial court, to convict.
In State v. Hopkins, 56 Vt. 263, decided in 1883, this court affirmed the ruling of the court below, denying to respondent’s counsel the right and privilege of reading to the jury authorities in support of the rule of law for which he contended. In passing upon this question the court say : “ It does not follow that because the jury are judges of the law, that counsel can read what they please to them. 'This rule, that the jury are judges of the law, does not affect the course or order of procedure of the trial in the least; it is the result of the -power of the jury rather than of any abstract inherent right, and the trial should be conducted in the usual course of proceedings.”
In State v. Meyer, 58 Vt. 457, heard in January, 1886, and which was an indictment for murder, the court below instructed the jury that they had the right to adopt their theory of the law Instead of that of the court, with the qualification that they must not adopt a rule of law more prejudicial to the respondent than the law laid down by the court. In passing upon this point this court say: “The charge was clearly more favorable to the respondent than the request or the law, and he cannot complain.
“There is no qualification of the right of the jury, in a *10 criminal cause, to disregard the law as given them by the court, and adopt their own theory; and they may, in the exercise of this power, with the same propriety, adopt a rule of law more prejudicial to the respondent as well as one less prejudicial.”
In State v. Freeman, 63 Vt. 496, heard in May, 1891, which was a complaint ■ for profane swearing, based upon R. L. § 4254, the respondent claimed in the trial below, that it should be submitted to the jury to say, as a matter of law, whether the words used by him were profane curses or not, and it was so submitted to the jury, and they found the respondent guilty. In this court he contended that the jury made a mistake as to the law. Upon this contention the court say : ‘ ‘ The respondent evidently was not satisfied with the judgment of the court in respect to the law, but insisted that the jury should pass upon both law and fact, and they were permitted to do so ; if they judged correctly, he is not harmed, if erroneously, as it was a matter of his own seeking, he should not now be permitted ‘ to unravel the whole proceedings’ to be relieved from a misfortune which he has brought upon himself. If he was erroneously convicted, it is only another instance of ‘ the engineer hoist with his own petard.’”
The views expressed in State v. Meyer, and State v. Freeman, supra, are in accord with the opinion of the court delivered by Barrett, J., in State v. Clark, 37 Vt. 471, although that case cannot be considered an authority as it was held that it was not properly before the court.
These are all the cases in this State in which the question whether jurors, in criminal cases, are judges of the law and the fact, has been passed upon, and they all substantially follow the doctrine laid down in State v. Croteau,, supra, and are based upon it, with the exception of State v. Woodward, supra. It will be observed, however, that in the later cases, there has been a tendency to give this rule such *11 effect, even to its extreme, logical results, as to discourage and perhaps deter respondents from invoking it in their behalf.
Neither the constitution of this State nor its statutes, confer, in express terms, this power upon jurors, if they possess it.
R. L. § 689, provides that “ so much of the common law of England as is applicable to the local situation and circumstances, and is not repugnant to the constitution or laws, shall be law in this State.”
Therefore, in this State, jurors do not possess the legal right to judge of the law as well as of fact, unless jurors had such right at common law. If such right existed at common law, but is repugnant to the constitution and laws of this State, then the common law does not confer .such right. In other words, to establish that jurors have such right, it must appear that it existed at common law, and that it is not repugnant to our constitution and laws.
The decisions of the courts of justice contain the most certain and authoritative evidence of what the rules of the common law are. 1 Black. Com. 69-73; 1 Kent’s Com. 473. That respondents on trial have claimed jurors to be judges of the law, or that jurors in some instances have returned verdicts apparently contrary to the law as laid down by the court, affords no evidence of whát the common law is on this subject.
In State v. Croteau, supra, the majority opinion does not cite a single English decision which supports the rule laid down. De Lolme on the English Constitution is there cited in support of the doctrine. This work, strictly speaking, was onty an essay. It has been well said that its author “must be regarded simply as a learned foreigner, and sometimes showing that want of thoroughness and precision which even a learned man may display when writing *12 on subjects which his previous education had not fitted him to appreciate, and especially when discussing such a subject as the common law of England.” He cites no authority in support of what he says in regard to jury trials in criminal cases. •
The court, in State v. Croteau, also rely upon Stat. Westm. 2, c. 30, 13 Edward I. (A. D. 1285) as showing that the common law is as stated in the majority opinion. It is dfficult to see how it can be said to be an authority for the doctrine there declared to be the common law. This statute, so far as it relates to this subject, is as follows : “ The justices assigned to take assizes shall not compel the jurors to say precisely whether it be disseizin or not, so that they do show the truth of the fact, and.require aid of the justices ; but if they of their own accord, are willing to say that it is disseizin or not, their verdict shall be admitted at their own peril.” 2 Coke’s Inst. 421, 422.
In commenting upon this statute, the court in Pierce v. The State, 13 N. H. 536, well say : “ Now in giving construction to this act, Lord Coke says that the first question was, whether in case of assize, if the issue were joined upon a collateral matter out of the point of the assize, upon this special issue, the jury might give a special verdict. And it was resolved that in all actions the jury might find the special matter of fact pertinent, and pray the direction of the court for the law. 2 Inst. 425. If any collateral matter, distinct from the general issue of nul disseizin, etc., were pleaded, then the assize was turned into a jury, instead of a separate recognition to try the fact. Glanville, lib. 13 c. 20, 21. The collateral matter was determined by the same recognition in modum jurator. The jury were therefore limited to the collateral matter of fact out of the point of assize. But Glanville says that the assize could not decide upon the law connected with disseizin. He states that if the demandant object to put himself upon the grand assize, he *13 must show some cause why the assize should not proceed. If the objection be admitted, the assize itself shall thereby cease, so that the matter shall be verbally pleaded and determined in court, because it is then a question of law, etc. If the assize could not determine questions of law it would be most groundless assumption to say that they could be determined by the jury, who were to find only collateral facts out of the points of assize.
“The citation from Glanville is a strong authority against the right of the jury to decide the law upon the general issue involving law and fact. The implication from the latter part of the clause cited from Stat. Westm. 2d., is a strong argument against it. If the jury ‘ of their accord, are willing to say that it is disseizin or not, their verdict shall be admitted at their own -peril' But what peril could they incur if, by deciding the law, they simply exercised a right given to them by the statute? This phraseology is most singular, if the statute was intended to submit the law to them. The reasonable construction of it is, that if the jury will undertake to decide the law, they shall be subject to such penalty as may be imposed upon them for exceeding their jurisdiction. If they should incur a penalty, the act for doing which the penalty is imposed must be illegal, for nothing is better settled than that a penalty attached to the performance of an act makes the act itself unlawful.”
In his great argument in support of a motion for a new trial in the case of The King v. The Dean of St. Asaph, 3 T. R. 428, n. a; 1 Ersk. Speeches (Ed. 1870) 170, Lord Erskine contended that from the words of this statute, the right of the jury to decide the law upon the general issue was vested in them by the English constitution. But notwithstanding all the learning and genius with which he sought to maintain this proposition, he does not cite a single adjudged case in support of it.
The court, in State v. Croteau, also cite Lit. Ten. § 368, *14 and Co. Lit. 228 b, as supporting their holding. After speaking of giving a general verdict in an assize, Littleton in § 368 says: “In such case, where the inquest may give their verdict at large, if they will take upon themselves the knowledge of the law, they may give their verdict generally, as is put in their charge: as in the case aforesaid, they may well say the lessor did not disseize the lessee, if they will.”
The comments of the court in Pierce v. The State, supra, upon this passage from Littleton are so sound that we quote them. The court say : “Now it is to be remembered that Littleton, in the section cited, was not examining the rights or powers of juries. He was discussing matters very different. The passage was introduced in explaining the pleadings in real actions relative to estates upon condition. Plis remarks are, in brief, that after an estate tail is determined for default of issue, the donor may enter by force of the condition. But in the pleadings he must vouch a record, or show a writing under seal, proving the condition; but though no writing was ever made of the condition, a man may be aided upon such condition by a verdict taken at large upon an assize of novel disseizin, for as well as the jury may have conusance of the lease, they also as well may have conusance of the condition which was declared and rehearsed upon the lease. And in all actions where the justices will take the verdict at large, there the manner of the whole entry is put in issue. He then adds : ‘ If they will take upon them the knowledge of the law upon the matter, they may give their verdict generally, as put in their charge.’ An extended examination 'of the rights of juries would have been foreign to the particular matter in hand, and it was necessary for him merely to state the effect of a general verdict relative to estates upon condition. Littleton’s treatise was written in the reign of Edward IV., between the years 1461 and 1483, and his remark is nothing more than a cursory statement of *15 the provision of the Stat. Westm. 2d. .It is plain from Lord Coke's Commentary, that he did not understand Littleton as laying down the limits of the duties of jurors, or meaning to go any further than to allude to this statute. Coke says : ‘ Although the juries, if they will take upon them (as Lit-tleton here saith) the knowledge of the law, may give a general verdict, yet it is dangerous for them so to do, for if they doe mistake the law, they runne into the danger of an attaint.’ Co. Litt. 228 a. This by no means admits, but substantially denies, the right of juries to decide the law. If they may settle the law, their conclusion is the law, and they cannot ‘ runne into the danger of attaint.’ ”
We do not think the authorities support the decision in State v. Croteau, supra.
In State v. Croteau, after citing several early English cases in which jurors had been fined or imprisoned for disregarding the instructions of the judges as to the law, the court cite Bushell’s case, Vaughn 135, (5 State Trials 99) as the final vindication of the claim that jurors, at common law, are judges of the law in criminal cases. This was not the ground of the decision in that case. That case arose in this way. William Penn and William Mead were tried together at the Old Bailey before a court of oyer and ter-miner, for a breach of the peace in being concerned in a tumultuous and unlawful assembly. The proof tended to show that two or three hundred persons had quietly and peaceably met in Grace St., London, and listened to the preaching of Penn. Penn contended that there had been no breach of the peace. The court charged against the prisoners, but disregarding the charge, the jury returned a verdict of not guilty. The court thereupon fined them forty marks each, and committed them to Newgate. Bushell, one of the jurors, brought his writ of habeas corpus to the Court of Common Pleas. The return upon the writ was that Bushell, being one of the jury, had acquitted Penn and *16 Mead against evidence, and “ that the jury did acquit against the direction of the court in matter of law.” The court put its decision upon the narrow, though for the case, conclusive ground, that the general issue embracing fact as well as law, it can never be proved that the jury believed the testimony on which the fact depended, and in reference to which the direction was given, and so they cannot be shown to be guilty of any legal misdemeanor in returning a verdict, though apparently against the direction of the court in matter of law. The relator was accordingly discharged, and it has been the settled law from that day to this in England and this country, that jurors cannot be called to account for their verdict. This, however, is far from saying that it is their legal province to override the law laid down by the court, and to declare it for themselves.
We think such a rule contrary to the fundamental maxims of the common law, and to adjudged cases in England and the uniform practice of its highest courts.
In his able work on Trial.by Jury, Mr. Forsyth says:
“ It was early provided that the jury should not entangle themselves with questions of law, but confine themselves simply and exclusively to facts. This rule was afterwards expressed by the well known maxim called ‘ that decantatum in our books,’ '•ad qucestionem facti non respondent judices, ad qucestionem juris non respondent juratoresj — it is the office of the judge to instruct the jury in points of law — of the jury to decide on matters of' fact. Broom’s Legal maxims (6th Am. Ed.) 8o, “ an invaluable principle of jurisprudence, which more than anything else has upheld the character and maintained the efficiency of English juries as tribunals for the judicial investigation of truth.” Forsyth’s Jury Trials (Morgan’s Ed.) 216. In further discussing the claims of some writers that “ the jury are entitled in all cases, where no special pleas have been put on the record, to give a general verdict according to their own views of the law, in *17 criminal as well as civil cases,” he says, (pp. 217-219) :
■“ But it is impossible to uphold the doctrine. It is founded on a confusion between the ideas of power and right. * '* * Although juries have undoubtedly the power in such cases to take the law into their own hands, and so, it maybe, defeat the ends of justice, or do what they believe to be substantially justice, they do so at a sacrifice of conscience and duty. The law cannot depend upon a verdict of a jury, whose office is simply to find the truth of disputed facts; and yet such must be the result, if they may decide contrary to what the judge, the authorized expounder of the law, lays down for their guidance. This would introduce the most miserable uncertainty as to our rights and liberties, the ■misera servitus of vagum jus, and be the most fatal blow that could be struck at the existence of trial by jury. Can it for a moment be contended that twelve men in a jury box are to determine that not to be an offence which the law, under a penalty, forbids ? May they pronounce that to be manslaughter or justifiable homicide which the law declares to be murder? If so, then they may by their verdict abrogate, by rendering ineffective, every enactment of the legislature, and they become a court of appeal from the solemn decision of Parliament and the Crown. That they can do so is not disputed, but so can the judges give judgments •contrary to law, if they choose to disregard their oaths, and yield to the influence of corrupt motives. In both cases the law presumes that men will act according to their duties.
“Indeed, it is difficult to understand how anyone acquainted with the principles and settled practice of the English law, can assert that it sanctions the doctrine which is here combated.”
Mr. Forsyth, after showing that juries became unpopular and fell into disuse in Scandinavia and Germany for the reason that they there were invested with the whole judicial power, the right to determine the law as well as the fact, says *18 (p. 9, 10.) : “Far otherwise has been the case in England. Here the jury never usurped the functions, of the judge. They were originally called to aid the court with information upon questions of fact, in order that the law might be properly applied; and this has continued to be their province to the present day. The utility of such an office is felt in the most refined as well as in the simplest state of jurisprudence. * * * Hence it is that the English jury flourishes still in all its pristine vigor, while what are improperly called the old juries of the continent have either sunk into decay or been totally abolished.”
In Townshend’s Case, Plow, in, decided about A. D. 1554, the jury undertook to decide a point of law as to a remitter, and the finding was held void, because it was not the duty of the jury to judge what the law is. The case of Willion v. Berkley, Plow. 223, is express upon the same point. The court there said: “At the beginning of our law it was ordained that matters of fact should be tried by twelve men of the country where the matter arises, and matters of law by twelve judges of the law, for which purpose there were six judges here and six in the King’s Bench, who upon matters of law used to assemble together in a certain place, in order to discuss what the law was therein, so that if a traverse should be here taken, it would be to make, twelve ignorant men of the country try that whereof they are not judges, and which does not belong to them to try.” The case of Grendon v. Bishop of Lincoln, Plow. 493, is also to the same effect.
In 1649 John Lilburne was tried for treason. At his trial he retorted upon the judges by saying : “You that call yourselves judges of the law are no more but Norman intruders ; and in deed and in truth, if the jury please, are no more but cyphers to pronounce their verdict,” a doctrine which caused Jermin, J., to exclaim, “Was there ever such a damnable, blasphemous heresy as this is, to call the judges of the law *19 cyphers?” The jury were instructed that they were not judges of the law, and that they “ought to take notice of it, that the judges, who are twelve in number, and who are sworn, have ever been the judges of the law, from the first time that we can ever read or hear that the law was truly expressed in England, and the jury only judges of matter of fact.” 2 Harg. St. Trials 19,70; Forsyth’s Trial by Jury 220.
In Algernon Sidney’s case, 3 Harg. St. Tr., 818, tried in 1683, and in Rex v. Oneby, 2 Str. 766, tried in 1727, the jury were instructed to the same effect.
In King v. Poole, Hard. 28, determined in 1734, and which was a criminal information in the nature of a quo war-ranto, to try the validity of an election to á corporate office, and which had been submitted to a jury, a motion was made to set aside the verdict as against law. In passing upon this motion Lord Hardwick said: “The thing that governs greatly in this determination is that points of law are not to be determined by juries; juries have a power by law to determine matters of fact only; and it is of the greatest consequence to the law of England, and to the subject, that these powers of the judge and jury are kept distinct; that the judge determine the law and the jury the fact; and if they ever come to be confounded it will prove the confusion and destruction of the law of England.”
The Dean of St. Asaph’s case, sufra, was determined in 1784, and was an indictment for libel. Mr. Erskine defended him and insisted that the jury had the right to pass upon the whole issue, including the law as well as the fact. But Buffer, J., instructed the jury that the judges were appointed to decide the law, the jury to decide the fact, and that whether the publication charged in the indictment was a libel or not was merely a question of law, with which the jury, had nothing to do. 1 Ersk. Speeches (Ed. 1870) 132. Erskine moved for a new trial on the ground of misdirec *20 tion, and in support of the motion is said to have made one of the most captivating arguments ever listened to in Westminster Plall. But the judges unanimously sustained the ruling of the court below. In delivering his opinion in this case Lord Mansfield, who had been Chief Justice of the King’s Bench for twenty-eight years, said: “The fundamental definition of trial by jury depends upon a universal maxim that is without an exception. Though a definition or maxim without an exception, it is said, is hardly to be found, yet this I take to be a maxim without an exception: Ad quest ionem jtir is non respondent jtir alores ; ad questio-nem facti non respondent judices.
“Where a question can be severed by the form of pleading, the distinction is preserved upon the face of the record, and the jury cannot encroach upon the jurisdiction of the court; when, by the form of the pleading, the two questions are blended together and cannot be separated upon the face of the record, the distinction is preserved by the honesty of the jury. The constitution trusts that under the direction of a judge they will not usurp a jurisdiction which is not in their province. They do not know, and are not presumed to know, the law; they are not sworn to decide the law; they are not required to decide the law. * . * * But further, upon the reason of the thing and the eternal principles of justice, the jury ought not to assume the jurisdiction of the law. As I said before, they do not know, and are not presumed to know, anything of the matter. * * * It is the duty of the judge, in all cases upon general issues, to tell the jury how to do right, though they have it in their power to do wrong, which is a matter between God and their own consciences.
“To be free is to live under a government of law. * * * Miserable is the condition of individuals, dangerous is the condition of the State, if there is no certain law, or which is the same thing, no certain administration of law, to protect individuals or to guard the State.”
*21 We have been unable to find any English case since the Dean of St. Asaph’s case, holding that that case was not decided in accordance with the common law and the uniform course of decision.
The controversy in England over the question whether jurors are judges of the law, originated largely from the course of procedure in prosecutions for libel. Under the law as it stood at the time of the Dean of St. Asaph’s case and for some years after, if the respondent made no attempt at justification on trial, the only questions submitted to the jury were whether the respondent was guilty of publishing the alleged libel, and whether the inuendoes were true as charged. The judges in such cases were accustomed to direct the jury to return a verdict of guilty upon proof of publication and the truth of the inuendoes, without instructing them as to whether the paper, if they so found, was or was not a libel. The question of the malicious intent charged in the indictment was not submitted to the jury. If the verdict was guilty, whether the publication was libellous was determined by the court, and if held to be libellous, then malicious intent was implied as a matter of law, and need not be proved. The respondent was thus put to the trouble and expense of moving in arrest of judgment, or suing out a writ of error, if he thought the publication innocent. The doctrine of implied malice which, when applied to homicides, has been questioned by some of the ablest jurists in this country and in England, was very obnoxious; to respondents when thus applied to libels. It was strenuously contended that the intent with which an alleged criminal act was done was not a question of law, but one of fact to be determined by the jury, and that the jury should be permitted to pass upon the malicious intent in libel cases the same as in other criminal cases. After a discussion of this question in the courts and Parliament for over half a century in England, it was finally settled in A. D. 1792 by St. 32 *22 Geo. III., ch. 60, known as “Fox’s Libel Act,” which provides that in prosecutions for libel the jury may give a general verdict of guilty or not guilty upon the whole matter put in issue, and they shall not be required or directed by the court to find the respondent guilty merely on proof of publication and of the truth of the inuendoes. This act .further provides that on every such trial the court shall, according to their discretion, give their opinion and direction to the jury on the matter in issue, in like manner as in other criminal cases; that nothing in the act shall prevent jurors from finding a special verdict in their discretion, as in other ■criminal cases; and that in case the respondent is found .guilty by the jury, he may move an arrest of judgment, on such ground and in such manner as by law he might have ■done before the passage of the act.
It has been claimed that this act made jurors, at least in libel cases, judges of the law, and declared such to be the ■common law. But such is not the construction given to it in England. In Rex v. Burdett, 4 Barn. & Ald. 131, 6 E. C. L. Rep. 420, Best, J., says: “The judge is the judge of the law in libel as in all other cases.” Reg. v. Parish, 8 C. & P. 94, 34 E. C. L. Rep. 628; Parmiter v. Copeland, 6 M. & W. 165 ; Levi v. Milne, 4 Bing. 195 ; Forsyth’s Trial by Jury (Morgan’s Ed.) 233.
• After a careful examination of the authorities, Judge Curtis, in United States v. Morris, 1 Curtis C. C. 53, says: “Considering the intense interest excited, the talent and .learning employed, and consequently the careful researches made in England near the close of the last century, when the law of libel was under discussion in the courts and in Parliament, it cannot be doubted that, if any decision having the least weight could have been produced in support of the general proposition that juries are judges of the law in criminal cases, it would then have been brought forward. I am not aware that any such was produced. And the decision *23 of the King’s Bench in Rex v. The Dean of St. Asaph, 3 T. R. 428, and the answers of the twelve judges to the questions propounded to them by the House of Lords, assume, as a necessary postulate, what Lord Mansfield so clearly declares in terms, that by the law of England juries cannot rightfully decide a question of law. Passing over what was asserted by ardent partisans and eloquent counsel, it will be found that the great contest concerning what is known in history as Mr. Fox’s Libel Bill, was carried on upon quite a different ground by its leading friends; a ground which, while it admits that the jury are not to decide the law, denies that the libellous intent is- matter of law; and asserts that it is so mixed with the fact that, under the general issue, it is for the jury to find it as fact. Annual Reg., Vol. 34, p. 180; 29 Parl. His. Debates in the House of Lords, and particularly Lord Camden’s Speeches. Such I understand to be the effect of that great famous declaratory law. St. 32 Geo. III., ch. 60. The defendant’s counsel argued that this law had declared that on trials for libel the jury should be allowed to pass on law and fact, as in other criminal cases. But this is erroneous. Language somewhat like this occurs in the statute, but in quite a different connection, and, as I think, with just the opposite meaning.
“The court or judge before whom such indictment or information shall be tried, shall, according to their or his discretion, give their or his of inion and directions to the jury, on the matter in issue between the king and the defendant, in like manner as in other criminal cases.” This seems to me to. carry the clearest' implication that in this and all other criminal cases the jury may be directed by the judge; and that while the object of the statute was to declare that there was other matter of fact besides publication and the inuendoes to be decided by the jury, it was not intended to interfere with the proper province of the judge, to decide all matters of law.”
*24 In I. Russell on Crimes (8th Am. Ed.) § 263, it is said r “In criminal cases the judge is to define the crime, and the jury are to find whether the party has committed that offence.. This act made it the same in cases of libel, the practice having been otherwise before. It has been the course for a long time for the judge, in cases of libel, as in other cases of a. criminal nature, first to give a legal definition of the offence, and then leave it to the jury to say whether the facts necessary to constitute that offence are proved to their satisfaction, and that whether the libel is the subject of a criminal prosecution or a civil action.”
The old common law oath of jurors would seem to indicate that they were not the judges of the law. By it they are sworn “a true verdict to give according to the evidence.” 4 Black. Com. 355. This must mean that they are to decide the facts according to the evidence. If they.may decide the law, they may act as to that without the obligation of an oath. The law is not given in evidence.
It has been urged that because jurors have the power therefore they have the legal right to ignore the law as laid down by the court, and to decide it according to their own notion. This argument proves too much, and is based upon a confusion of the idea of physical power'to do a thing, as distinguished from the moral and legal right to do it. A judge has the -power to render a judgment which is corrupt and contrary to law, but when he does so he goes beyond his legal right as judge, and violates his oath of office. No one claims that in civil cases jurors are judges of the law, yet they have the same power in an action of trespass or trover to return a verdict contrary to the instructions of the court as to the law, that they have in a criminal case. If the physical power to do a thing makes them judges of the law in the one case, it is not' apparent why it should not have the same effect in the other, and therefore make them paramount judges of the law in all cases, civil and criminal.
*25 If, at the common law, jurors are the paramount judges of the law in criminal cases, the respondent must have the legal right to have such supreme judges pass upon the law of his case when he puts himself upon his country for trial. By the common law, however, jurors in such a case may, if they so elect, return a special verdict setting forth the facts which they find, and leave it for the court to pass upon and apply the law. 4 Black. Com. § 361.
Notwithstanding the doctrine laid down in State v. Croteau, supra, we have seen that under the decisions of this court, cited, it is not error for the trial court to attempt to persuade jurors not to act as judges of the law, thus without doubt, in a great majority of cases actually depriving the accused of his right to have them pass upon the law as well as the facts of his case, if they are the paramount judges of the law.
Again, if jurors are the judges of the law, if in them is vested the right and supreme power by the law to declare what the law is which shall govern and decide each case as it comes before them, it seems inconsistent' and absurd to hold, as do the courts in this and other States, that the court may direct a verdict of acquittal, when in its opinion the evidence will not justify a conviction, and may also set aside a verdict convicting the accused, if it thinks the verdict is contrary to law or not warranted by the evidence.
As before suggested, this practice in effect makes jurors paramount judges of the law only in case they acquit, as in that event the court cannot set aside the verdict, nor can the accused be again put upon trial for the same offence. But the doctrine of autrefois acquit is in no wise dependent on jurors being judges of the law. A verdict of acquittal in a criminal case is final, “not because the jury have a right finally to decide the law, but because of the rule ne bis idem, familiar to all jurisprudence, that no man is to be tried for *? an offence of which he has been acquitted.” i Crim. Law Mag. 54.
In the opinion of the court in State v. Croteau, supra, considerable stress is laid upon the idea that in the past jurors have been the palladium of the liberties of the subject against the encroachments of the government, and the usurpation of unjust judges in its behalf, and that the mutation of time may bring in a day when our judges will become corrupt and the tools of tyranny in high places, and that then the rule that jurors are judges of the law will prove to be the conservator of the rights of individuals. When examined in the light of facts, this argument is without weight. This is a “government of the people, by the people, for the people.” In this State the making of constitutions and the enacting of laws is vested in the people. However elected or appointed, our judges are the servants of the people, to administer justice according to law and equity, and it would be sufficient to say that they have never been recreant to the trust imposed upon them. Whenever a rule of law as administered by the courts becomes obnoxious to the people, or they think it detrimental to their best interests, they have only to exercise their power to abolish or modify it to rid themselves of it.
In times of public commotion or excitement, a respondent charged with the commission of crime often has just cause to fear popular passion and prejudice, which may be represented more or less by the jury, more than anything else in the case against him, and it is then that he has occasion to rely upon the court to protect him from the vox fofuli, and to see that he is tried and judged according to the law, and not by the passions or caprice of a jury.
The theory that jurors have always proved a protection to the individual against the corruption and oppression of those of influence and of those in power is not sustained by the facts of history.
*27 In Queen Elizabeth’s time trial by jury was not much in favor among the middle and lower classes, on account of the corruption of juries, and their subserviency to the upper •classes, 1 Brodie’s Const’l His. of Eng. 227. Says Wharton, (1 Crim. Law Mag. 54) “The despotism of which William Penn complained was exercised not through courts, but through juries. * '* * In England-, not only during the Stuarts, but for many years after the Stuart dynasty ■ ceased, it was the rule that after a conviction by a jury there could be no new trial. Convictions were thus assimilated to acquittals. A verdict, when rendered in a criminal case, could not be disturbed, * * * But who were the juries? * * * They were virtually the appointees of the Crown. ‘The juries,’ says Macaulay, (4 His. Eng. 135, Harper’s Ed.) ‘carefully selected by sheriffs whom- the Crown had named, were men animated by the fiercest party spirit— men who had as little tenderness for an Exclusionist or a Dissenter as for a mad dog.’ Quakers, of course, being among the maddest of mad dogs, were convicted under such a system, on the most frivolous evidence and in defiance of law, and when appeal was made to the court, the answrer was, ‘Verdicts in criminal cases are final.’ It was to this rule that man}r infamous convictions in the reign of Charles II. and James II. are to be charged.”
The doctrine that jurors are judges of the law is contrary to a great preponderance of authority in this country. Among the more important authorities against it are : Prof. Jur. ss. 373 et seq; Cool. Con. Lim. (4th Ed.) 397-402; 2 Thomp. Tr. ss. 2,132 et seq; 3 Green. Ev. (8th Ed.) s. 179; Walk. Am. L. (5th Ed.) 696; 3 Whar. Cr. L. (6th Ed.,) ss. 3,094 et seq; 1 Benn. & H. Cr. Cas. (2d Ed.) 428, note to State v. Croteau; State v. Wright, 53 Me. 328; Pierce v. State, 13 N. H. 536; Lord v. State, 16 N. H. 322; 41 Am, Dec. 729; Com. v. Porter, 10 Met. 263 ; Com. v. Anthes, 5 Gray 185 ; Com. v. Rock, 10 Gray 4 ; Com. *28 v. Anthes & Huber, 5 Gray; Com. v. Thornily, 6 Allen 448 ; Dorr’s Trial, 121; People v. Pine, 2 Barb. 566; Carpenter v. People, 8 Barb. 610; Safford v. People, 1 Park. 474; Duffy v. People, 26 N. Y. 588; Penn. v. Bell, Addison 156; Nicholson v. Com., 96 Pa. St. 503; State v. Feandell, 5 Harring. (Del.) 475 ; Davenport v. Com., 1 Leigh 588; Com. v. Garth, 3 Leigh 761; Dejarnette v. Com., 75 Va. 867 ; State v. Pearce, 1 Jones (Law.,) 251 ; States. Drawdy, 14 Rich. (S. C.) 87; States. Syphrett, 27 S. C. 29, 13 Am. St. Rep. 616 and note; Ridenhour v. State, 75 Ga. 382; Danforth v. State, 75 Ga. 614; Pierson v. State, 12 Ala. 153; Batre v. State,, 18 Ala. 119; Washington v. State, 63 Ala. 135 ; Williams v. State, 32 Miss. 389; 66 Am. Dec. 615 ; Neis v. State, 2 Tex. 280; McGowen v. State, 9 Yerg. 184; Montee v. Com., 3 J. J. Marsh. 149; Com. v. VanTuyle, 1 Met. (Ky.) 1; Pleasant v. State, 13 Ark. 360; Sweney v. State, 35 Ark. 585 ; Montgomery v. State, 11 Ohio 424; Robbins v. State, 8 Ohio 131; Adams v. State, 29 Ohio St. 412 ; Hamilton v. People, 29 Mich. 173 ; Hardy v. State, 7 Mo. 607 ; State v. Farger, 66 Mo. 173 ; State v. Hosmer, 85 Mo. 553 ; Parish v. State, 14 Neb. 60; People v. Anderson, 44 Cal. 65; People v. Ivy, 49 Cal. 56; State v. Ford, 37 La. Ann. 443, 465 ; State v. Hannibal, 37 La. Ann. 619 ; State v. Miller, 53 Iowa 156.
In the Federal courts the doctrine is denied in United States v. Shive, 1 Bald. 512; United States v. Battiste, 2 Sumn. 243 ; United States v. Fenwick, 4 Cranch C. C. 675 ; Stitinus v. United States, 5 Cranch C. C. 573 5 United States v. Morris, 1 Curtis C. C. 53 ; United States v. Riley. 5 Blatchf. 204; United States v. Greathouse, 4 Sawy. 457, and United States v. Anthony, 11 Blatchf. 204.
For an able discussion of this question, and for a vigorous statement of reasons against the rule adopted in State v. Croteau, also see an article by Wade, Ch. J. of Montana, *29 in 3 Cr. L. Mag. 484, and a criticism in 1 Cr. L. Mag. 51, by Francis Wharton, of the opinion of Sharswood, Ch. J., in the case of Kane v. Com., 89 Pa. St. 522, which opinion and decision is explained in Nicholson v. Com., 96 Pa. St. 503.
In the trial of a criminal case in the United States Circuit Court in the City of New York, Thompson, J., was requested to instruct the jury that they were the judges of the law as well as of the fact, which he refused to do, in the terse but not ambiguous language : “I shan’t; they ain’t.” 2 Whar. Cr. L. § 3,100.
We are not able to learn that this question has been before the Supreme Court of the United States, but Baldwin, Curtis, Field, Story and Thompson, judges of that court, and eminent jurists, have emphatically denied the right of jurors to determine the law in civil or criminal cases.
Maryland, Louisiana, Illinois, Indiana and Georgia, have an express constitutional provision by which jurors are declared to be judges of the law in criminal cases. Yet in some of these States the Supreme Court has held that it is not error to charge the jury that it is their duty to take the law from the court. See La. & Ga. cases cited sufra; 1 Crim. L. Mag. 52.
Under a provision of the Constitution of Maryland, the language of which was: “In the trial of all criminal cases the jury shall be judges of the law as well as fact,” it was held in Franklin v. State, 12 Md. 236, that this language did not authorize the jury to judge of the constitutionality of an act of the Assembly, and that counsel for the respondent had no right to argue that question to them. It is difficult to see the logic of this limitation, or to understand why jurors may not pass upon the fundamental law embodied, in the Constitution and on the statute and common law, as occasion may require, if they are the paramount judges of the law.
*30 By statute in Connecticut jurors.are made judges of the law in criminal cases. State v. Buckley, 40 Conn. 247.
By an examination of the authorities above cited, it appeal's that every American case cited by the court in State v. Crotcau, not turning upon a statutory or constitutional provision, has since been, expressly or in effect, overruled.
While a jury are out deliberating upon a criminal case,, it is reversible error for the court to furnish them with the statutes of the State, that they may read certain sections designated by the court, touching the case under consideration. In such a case the rule is the same if the jury attempt to enlighten themselves as to the law by reading the statutes or other law books, whether they do so with or without the knowledge or consent of the court. State v. Patterson, 45 Vt. 316; State v. Smith, 6 R. I. 33.
The doctrine that jurors are judges of the law in criminal cases is repugnant to Art. 4 and Art. 10 of Chap. 1 of the Constitution of Vermont, which guarantee to every person within this State “a certain remedy” for all wrongs, con-formably to the laws, and that he shall not be “deprived of his liberty except by the laws of the land.”
In United States v. Battiste, sufra, Mr. Justice Story said: “If the jury were at liberty to settle the law for themselves, the effect would be not only that the law itself would be most uncertain, from the different views which juries might take of it, but, in case of error, there would be no remedy or redress of the injured party; for the court, would not have any right to review the law, as it had been settled by the jury. Indeed, it would be almost impracticable to ascertain what the law, as settled by the jury, actually was. On the contrary, if the court should err in laying down the law to the jury, there is an adequate remedy for the injured party by a motion for a new trial or a writ of error, as the nature of the jurisdiction of the particular court may require. Every person accused as a criminal has a *31 right to be tried according to the law of the land — the fixed law of the land — and not by the law as a jury may understand it, or choose, from wantonness or ignorance or accidental mistake, to interpret it.”
With great force and clearness, Campbell, J., in Hamilton v. People, 29 Mich. 173, on this subject says: “It is necessary for public and private safety that the law shall be known and certain, and shall not depend on each jury that tries a cause; and the interpretation of the law can have no permanency and uniformity, and cannot become generally known except through the action of the courts. * '* * If the court is to have no voice in laying down these rules, it is obvious that there can be no security whatever, either that the innocent may not be condemned, or that society will have any defence against the guilty. A jury may disregard a statute just as freely as any other rule. A fair trial in time of excitement would be almost impossible. All the mischief of ex post facto laws would be done by tribunals and authorities wholly irresponsible, and there would be no method of enforcing with effect many of our most important and legal safeguards against injustice. Parties charged with crime need the protection of the laws against unjust convictions quite as often as the public needs it against groundless acquittals. Neither can be safe without having the rules of law defined and preserved, and beyond the mere discretion of any one.”
Ch. J. Wade striking^ sums up this phase of this question. He says : “The end of all good governments is the honest and uniform administration of good laws. Safety comes to a people, and life, liberty, and property are secure when no one can be deprived thereof except by ‘due process of law,’ and when, in the adjudication of public and private rights, judicial authority speaks the pure voice of the law- — - ‘the law of the land.’ The doctrine that jurors are judges of the law in criminal cases abolishes the sacred Taw of the *32 land,’ which, since the days of King John and Magna Charta, has been the birthright of all English speaking people, and tends to the exercise of irresponsible arbitrary power. They are judges whose decision cannot be reviewed. Their decrees are irrevocable and final. If they set aside a constitution or a statute, their act cannot be questioned. If in the jury room they legislate and enact a law for the case in hand, it never sees the light of day; it is a mystery and a myth; no one can lay his hands upon it; no one can construe or interpret it; it affords no guide for the future, for it vanishes into nonentity the moment the verdict is returned, and the verdict makes no sign; the decision and the judges quickly disappear.
‘The showman and the show,
Themselves but shadows, into shadows go.’”
3 Cr. L. Mag. 497.
Wharton says: “We must hold, to enable us to avoid the inconsistency, that, subject to the qualification that all acquittals are final, the law in criminal cases is to be determined by the court. In this way we have our liberties and rights determined, not by an irresponsible, but by a responsible tribunal; not by a tribunal ignorant of the law, but by a tribunal trained to and disciplined by the law ; not by an irreversible tribunal, but by a reversible tribunal; not by a tribunal which makes its own law, but by a tribunal that obeys the law as made. In this way we maintain two fundamental maxims. The first is, that while to facts answer juries, to the law answers the court. The second, which is still more important, is ‘■nullum crimen, milla j)cena, sine legel Unless there be a violation of law pre-announced, and this by a constant and responsible tribunal, there is no crime, and can be no punishment.” 1 Crim. Law Mag. 56.
In Com. v. Anthes, 5 Gray 195, that able judge and profound jurist, Ch. J. Shaw, said : “It is a fundamental principle of the common law that the adjudication of the highest *33 tribunal, or court of last resort, in matters of law, shall stand as rules of law in all similar cases, which makes it necessary, in every system of jurisprudence following the common law, that all decisions in matters of law made by subordinate courts and judges, shall in some mode be re-examinable, and in some form be brought before the court of last resort, to one tribunal, one judicial mind and judgment, whether vested in one or many, persons, in order that the rules of law may Be uniform throughout the whole extent of territory subject to the same government, that all the inhabitants alike owing allegiance shall stand equal before the law, alike entitled to its protection and benefits, and alike amenable and punishable for its violation.”
This principle is recognized in our system of jurisprudence, and is embodied in R. L. §§ 1,699 and 1,700, which provide that after a. verdict of guilty in a criminal case all questions of law arising therein, decided’ by the county court, shall, upon motion of the respondent, be allowed and placed upon the record, and that the same shall thereupon pass to the supreme court for a final decision.
The doctrine that jurors are the paramount judges of the law is repugnant to these provisions of our statute law.
Juries are usually composed of honest men, who desire to perform their duties to the best of their abilities, but they are usually unlearned in the law. For the sake of illustration we will assume that a Criminal case is on trial, in which the jury think the court has erred in its statement of the law, and they set about to correct it. The case is submitted to them. What follows? Under our procedure they are put in charge of an officer, and are not allowed to separate until they have agreed upon a verdict and delivered it in court, or have been discharged from á further consideration of the case, nor. are they allowed to speak to anyone about the case but to their fellow-jurors, nor is anyone permitted to speak to them about it. Debarred from access to law books of *34 authority, from which they might hope to obtain some light to aid them, not even permitted to read the statutes which perchance they are attempting to construe, unaided by precedent, and utterly ignorant of the law of the case, they are left to evolve i't from their “inner consciousness.” When thus evolved and applied by them to the case, their decision as to the law cannot be placed upon the record pursuant to the requirements of the statute, for it can never be known, except by inference or conjecture, what they held the law to be.
Art. 6 of the Constitution of the United States makes it, and all laws and treaties made in pursuance thereof, the supreme law of the land, and declares that judges in every State shall be bound thereby, notwithstanding anything in the constitution or laws of any State to the contrary. The judges of the Supreme Court of the United States are the final arbiters to adjudicate and determine all questions of law arising under this supreme law of the land, 1 Sto. Const. (Cool. Ed.) § 375 et seq.
In State v. Wright, supra, the court well said: “To allow juries to revise, and if they think proper, overrule those adjudications, would deprive them of their final and authoritative character, and thus destroy the constitutional functions of the court.” On this ground the court in that case, and in Pierce v. State, supra, held that the doctrine that jurors are the paramount judges of the law is in contravention of the constitution of the United States, and therefore unconstitutional. We think this view is sound. These courts support it by reasoning which, so far as we are able to find, remains unanswered.
We are thus led to the conclusion that the doctrine that jurors are the judges of the law in criminal cases is untenable ; that it is contrary to the fundamental maxims of the common law from, which it is claimed to take its origin; contrary to the uniform practice and decisions of the courts *35 of Great Britain, where our jury system had its beginning and where it matured; contrary to the great weight of authority in this country ; contrary to the spirit and meaning of the constitution of the United States; repugnant to the constitution of this State; repugnant to our statute relative to the reservation of questions of law in criminal cases, and passing the same to the supreme court for final decision; and, as was said by Walton, J., in State v. Wright, supra, “Contrary to reason and fitness, in withdrawing the interpretation of the laws from those who make it the business and the study of their lives to understand them, and committing it to a class of men who, being drawn from nonprofessional life for occasional and temporary service only, possess no such qualification, and whose decision would be certain to be conflicting in all doubtful cases, and would therefore lead to endless confusion and perpetual uncertainty.”
It is the province and duty of the court in the trial of a criminal • cause to decide all questions of law which arise, and if there is a verdict of guilty to place them upon the record, and pass them to the supreme court for final decision on motion of the respondent. If the question of law touches matters affecting the course of the trial, such as the competency of witnesses, the admissibility of evidence and the like, the jury receive no direction concerning it; it affects the materials out of which they are to form their verdict, but they have no more to do with it than they would have had if it had arisen in some other trial. The presiding judge is to instruct the jury as to the law and its ultimate application to the facts of the case, if proved to their satisfaction beyond a reasonable doubt by the evidence submitted to them, and they are legally and morally bound to consider that they are correctly told the law by the judge. That law they are to apply to the facts which they find, and from both frame their verdict of guilty or not guilty.
*36 Thus trial by jury is seen- to be as so aptly described by Ch. J. Shaw, when he said: “In my judgment the true glory and excellence of'the’ trial by jury is this, that the power of deciding fact and law is wisely divided; that the authority to decide questions of law is placed in a body well qualified, by a suitable course of training, to decide all questions of láw; and another body, well qualified for' the duty, is charged with deciding all questions of fact, definitely; and whilst each, within its own sphere, performs the duty entrusted to it, such a trial affords the best possible security for a safe administration of justice, and the security of public and private rights.”
We, therefore, have no hesitation in holding that it was not error for the court below to refuse the instruction requested, although in so doing, we, on this question, overrule State v. Croteau■, supra, and the cases in this State which have followed it.

For the error indicated the exceptions are sustained, judgment reversed, verdict set aside, and cause remanded for trial.