Vermont Superior Court
Filed 06/04/25
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00298

Elizabeth Rossetti v. Bare, Ltd. et al

## DECISION ON MOTION TO RECONSIDER RENEWED RULE 50 MOTION

After a jury verdict in Plaintiff's favor, Defendant Bare, Ltd. filed a Renewed Rule 50 Motion for Judgment as a Matter of Law. The court denied the motion. Bare then filed a Motion to Reconsider. By then, however, Plaintiff had filed a notice of appeal. Accordingly, the court denied the motion as moot, based on the teachings of *Kotz v. Kotz*, 134 Vt. 36, 38 (1975) ("[T]he trial court, in the absence of a remand, possessed no authority or jurisdiction to entertain, much less grant, any relief from final judgment while the denial of the very same requested relief was pending in this Court."). The Supreme Court has now remanded, for the limited purpose of ruling on the Motion to Reconsider. The court grants reconsideration of the Renewed Rule 50 Motion, and on reconsideration, grants that motion.

The court begins by vacating its denial of the Renewed Rule 50 Motion. That denial rested exclusively on the fact that Bare failure had failed to renew its earlier motion at the close of the evidence. That denial was clearly erroneous, relying on an interpretation of Rule 50 that had been overruled by the 2009 amendment of Rule 50. *See* V.R.C.P. 50 Reporter's Notes – 2009 Amendment ("The present amendment to V.R.C.P. 50(b) adopts a 2006 amendment of F.R.C.P. 50(b) that deleted this reference so that the rule requires only a prior motion made under V.R.C.P. 50(a), rather than a motion made at the close of all the evidence."). Bare clearly made a Rule 50 motion at the close of Plaintiff's evidence. That is all that the rule now requires. Accordingly, the court now turns to its consideration of that motion.

The court begins by debunking any suggestion that Bare failed to preserve the argument it now makes by failing to present that argument at the close of Plaintiff's evidence. The trial transcript reflects that after Plaintiff rested, Bare's counsel rose to make what he characterized as a motion for directed verdict. That motion was clearly directed at all of Plaintiff's claims: "We don't think that the plaintiff sufficiently established their claims under their complaint." Transcript, Nov. 4, 2024, 203:24–204:2. When counsel started to argue the evidence on one aspect of Plaintiff's claims, the court

hijacked the argument. It attempted to outline the various claims that had been asserted under Count One of the Complaint. *Id.*, 205:2–206:6. Having done so, the court addressed the claims on which the jury subsequently returned a verdict, and which are now the subject of the Renewed Motion: "on Count 1, is there not sufficient evidence of breach of contract in Mr. Graham's testimony? Viewed in the light most favorable to the plaintiff, as the Court is required to do on a Rule 50 motion, does that analysis not also apply with respect to 2019?" *Id.*, 206:8–12. The meaning of this inquiry was obvious to all in the courtroom: it inquired as to the sufficiency of the testimony of Plaintiff's expert to establish the numbers on which the calculations underlying the jury's subsequent verdict rested. Counsel responded: "Your Honor, Mr. Graham testified to the numbers. I think, under cross-examination, he acknowledged, not directly but indirectly, that he did not know how the total revenue line item was calculated, couldn't speak to that as far as the actual gross sales (indiscernible)." *Id.*, 206:13–17. When the court then asked, "Doesn't that evidence get the plaintiff to the jury on 2018 and 2019," Plaintiff's counsel responded, "Yes, Your Honor." *Id.*, 206:18–20.

This colloquy was more than sufficient to present and preserve the issue now before the court on the Renewed Motion. Bare now attacks the sufficiency of the evidence to support the jury's verdict. The only issue the court put to the jury was whether Plaintiff was entitled to additional bonus payments for calendar years 2018 and 2019. This, in turn, required the calculation of Bare's "gross sales" for those years. Plaintiff's only evidence, apart from Bare's own financial records, was the testimony of Mr. Graham. Particularly considering that it was the court and not Bare's counsel who was directing the flow of the argument, the assertion that Mr. Graham "couldn't speak to that as far as the actual gross sales" made clear that Bare was challenging the sufficiency of the evidence on that critical point. And the court's rhetorical question—"Doesn't that evidence get the plaintiff to the jury on 2018 and 2019?"—made clear that the court had denied the motion on that point. The court then moved the conversation to different aspects of Plaintiff's claims.

Eventually, the court reserved decision on the rest of the motion until the following morning. When the trial resumed that morning, the court granted Bare's motion as to all claims other than those pertaining to 2018 and 2019. Overnight, however, the court had had a minor epiphany: the discussion, however brief, of the evidence of "gross sales" in 2018 and 2019 caused the court to reflect upon the definition of that term. Accordingly, the court advised the parties that it had determined as a matter of law that as used in the parties' contract, "gross sales" means "gross receipts." *See Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 28, 218 Vt. 144 (When a contract term is not defined, the term "must be given effect in accordance with its plain, ordinary and popular sense.") (quotation and citation omitted). No

party objected to this determination, and when the court subsequently instructed the jury that " 'gross sales,' as used in the [parties'] contract here, means 'gross receipts,' " Plaintiff took no exception. That determination therefore became the law of the case.[1]

Unfortunately, in part due to the timing of the court's determination, the court did not then take the time to reconsider the sufficiency of Plaintiff's evidence to prove, as required for a verdict in her favor on the claims for unpaid bonuses, that Bare's gross receipts in 2018 and 2019 exceeded $2 million or $3 million, respectively. Instead, it advised the parties, "It is still a jury question whether the bonus was properly calculated based on gross receipts, but that is the instruction [the] jury is going to be given; is that they are to be looking at gross receipts, because that's what the contract clearly and unambiguously provides." As it turns out, however, a thorough review of the evidence reveals that there was no evidence to support the jury's ultimate determination that Bare's gross receipts in either 2018 or 2019 exceeded the necessary threshold.

Plaintiff's only evidence on the question of "gross sales" came from her expert (Jeffrey Graham) and the reports, derived from Bare's point-of-sale software program, on which Mr. Graham's testimony relied (principally, Exhibit 9). Mr. Graham's testimony made clear, however, that his definition of "gross sales" was based not on the "plain, ordinary and popular sense" of those words, but on the "accounting definition of gross sales." Tr., Nov. 4, 2024, 180:13–16; *see also id.*, 184:21–24 (definition of "gross sales" was based not on plain language but instead on "generally accepted accounting principles" (GAAP), which "use the accrual method"). He made clear that in applying that definition, "we're talking about gross sales, not revenue." *Id.*, 184:17–20. Thus, his definition included more than just dollars in the till: "It would be the difference between having a gross paycheck and a net paycheck. One number is much larger and includes all of the transactions considered to be sales versus the dollar amount that was net of all of those items listed on Exhibit Number 9." *Id.*, 184:12–16.[2] And because Mr. Graham's exclusive focus was on something other than "revenue," he offered no testimony whatsoever on Bare's actual receipts.

Mr. Graham's testimony, and Exhibit 13, which summarized that testimony, was the only evidence of "gross sales" in excess of $2 million for 2018 and $3 million for 2019. That evidence,

---

[1] The court notes that when Plaintiff took the stand as a witness in Defendants' case, she admitted that "when [she] agreed to the bonus structure in . . . the contract," she understood "the term gross sales to mean the money that Bare received during the course of a calendar year; just the total money they received." Tr., Nov. 5, 2024, 18:19–24. When, ignoring the proscription against questions that have been asked and answered, Defendants' counsel later started to ask Plaintiff again for her understanding of the meaning of the term, "gross sales," her counsel objected that the court had already determined the meaning of the term as a matter of law, and the court sustained the objection.

[2] Frankly, had Defendants' counsel made a timely objection, the court would properly have sustained the objection under V.R.E. 401 & 403 and stricken Mr. Graham's testimony.

however, was incompetent, as it was based on a definition of "gross sales" at odds with the law of the case. Plaintiff was therefore left only with Exhibit 9 for competent proof of Bare's "gross sales." That report shows a "Revenue Total" of $1,665,711.44 for 2018, and $2,106,540.59 for 2019. "Revenue Total," of course, is synonymous with "gross revenue," which, in turn, is synonymous with "gross receipts," and therefore with "gross sales." In short, the only competent evidence before the jury fell well short of meeting Plaintiff's burden of demonstrating "gross sales" in excess of $2 million for 2018 or $3 million for 2019. In other words, there was "no legally sufficient evidentiary basis for a reasonable jury to find for [Plaintiff] on [those] issue[s]." V.R.C.P. 50(a)(1).

In her opposition to this motion, Plaintiff posits, "Because the jury's actual deliberations were confidential and unknowalbe [sic] to counsel, any constellation of evidence which could justify their verdict necessarily defeats the motion based on insufficientcy [sic] of evidence." Plaintiff posits two such constellations: first, that the jury "based their calculation of gross sales based on the court's instruction that 'gross sales' menas [sic] 'gross receipts' and their own 'knowledge and experience that you possess as intelligent persons—in other words, your common sense,' as they were instructed in the jury charge"; and second, that the jury "considered Graham's testimony as to 'gross sales' under GAAP to be the same as 'gross receipts' or to inform the meaning of 'gross receipts.' " The answer to the first of these suggestions is that among the attributes of common sense must be the ability to do simple arithmetic, and apart from Mr. Graham's testimony, the jury had no evidence of receipts adding up to more than $2 million in 2018 or $3 million in 2019.[3] The more likely explanation, then, is Plaintiff's second—that the jury effectively disregarded the court's instructions, and instead based its verdict on Mr. Graham's definition of "gross sales." In any event, neither of these would be a permissible basis for a jury verdict. *See Driscoll v. Wright Cut and Clean, LLC*, 2024 VT 49, ¶ 6 ("We uphold a grant of judgment as a matter of law where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party,' such that the facts do not 'directly support[ ]' the claim and would require the jury to rely on 'conjecture, surmise or suspicion.' ") (citations omitted);

---

[3] The court notes in this regard that Exhibit 9 was the foundation of Mr. Graham's calculations, along with the underlying detail reports. Perhaps because Plaintiff's case focused entirely on proof of what proved to be an erroneous interpretation of the contract, however, she offered no evidence that would have allowed a lay juror to do more than speculate as to which of the numbers shown on any of the reports reflected actual receipts. There was but one exception to this observation: the "Revenue Totals" shown on Exhibit 9. It would certainly be a reasonable inference that revenues equal receipts. Without explanation of the inputs that tie into the various other numbers shown on that document, however, there would be no way of knowing to what extent any of those numbers reflected actual receipts.

Frankly, in light of the court's overnight epiphany, had Plaintiff requested leave on the second day of trial to reopen the evidence to allow her to present additional evidence directed at proving Bare's gross receipts, the court would have allowed the request. In deciding this motion, the court has also considered whether, instead of granting judgment pursuant to Rule 50, it should *sua sponte* order a new trial to afford Plaintiff that opportunity. As Plaintiff has never suggested that the court's late announcement of its interpretation of the contract deprived her of this opportunity, however, the court deems the argument to have been waived.

*see also State v. Burpee*, 65 Vt. 1, 16 (1892) ("[J]urors cannot be called to account for their verdict. This, however, is far from saying that it is their legal province to override the law laid down by the court, and to declare it for themselves.").

## **ORDER**

The court grants the renewed motion for judgment as a matter of law. The court vacates its Amended Judgment and will enter judgment for Defendants on all claims. Defendants, now being the prevailing parties, shall submit their verified bill of costs within 14 days of this Order. Plaintiff shall file any objections to the bill of costs within 7 days of its submission.

Electronically signed pursuant to V.R.E.F. 9(d): 6/3/2025 4:06 PM

_____
Samuel Hoar, Jr.
Superior Court Judge